Russell C. HARRIS, et. al., Respondent,

v.

Ralph J. DESISTO, Appellant.

No. WD 52504.

Missouri Court of Appeals,
Western District.

Oct. 1, 1996.

Rehearing Denied Nov. 26, 1996.

Marc E. Elkins, William E. Hanna, Kansas City, for respondent.

David A. Ramsay, Mary R. McCormick, Ramsay, Ford, Hiles & Cooper, Kansas City, for appellant.

Before HANNA, P.J., SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from a judgment which purports to rescind a "Joint Development Agreement" for breach and awards restitution in the amount of $53,551.37 and attorneys' fees under the agreement in the amount of $39,258.23. Appellant raises five points on appeal. The first two points address appellant's claim that he was ill and could not attend his trial and that the trial court erred in denying his motion for continuance and motion for new trial based on the same issue. The other three points deal with the inconsistency of the judgment in ordering rescission, but awarding damages on the con-

tract, and the sufficiency of the evidence supporting breach and rescission.

## Facts

Russell C. Harris, Jr., and Hannelore I. Harris, "respondents," as Co–Trustees of Hannelore I. Harris Trust, and Ralph J. Desisto, "appellant," entered into a "Joint Development Agreement" on November 3, 1993, under which respondents were to purchase a tract of real estate and provide financing for the development of a residential subdivision in Clay County, Missouri, known as Beacon Hill Subdivision, Phase III. Appellant was to act as the general contractor for the development of Phase III and was granted the exclusive right to "purchase or cause to be purchased" lots in Phase III for a period of two years after completion of the development phase. Completion of the development was to be evidenced by the recording of the final plat for the subdivision. Appellant, as the general contractor, was responsible for completing the development "in a timely and workmanlike manner." The agreement provided that the Trust and appellant would split the profits resulting from home sales in Phase III.

Respondents raised the money to purchase Phase III in 1993 by using their own home as collateral on a loan from United Missouri Bank, "UMB." Respondents used the UMB loan to purchase the fee title to Phase III in the name of the Hannelore I. Harris Trust, "the Trust." The Trust then entered into a Joint Development Agreement with appellant.

Sometime in July of 1994, appellant moved to Florida, after which he refused to deal with subcontractors, causing respondent Mr. Harris to act as general contractor in dealing with subcontractors and administering contracts, including accepting bids, obtaining plats, lien waivers, and permits for the city and county. On or about November 11, 1994, the respondents mailed to the appellant by certified mail their notice of termination of the agreement for breach. On November 18, 1994, appellant filed a "Memorandum Relating to Joint Development Agreement" with the Clay County Recorder of Deeds on Phase III. This effectively clouded the title to the

Phase III lots, preventing respondents after terminating their agreement with appellant from constructing homes thereon and selling the same.

So respondents could clear-up the title to Phase III and proceed with the development, they filed on January 12, 1995, their petition in this cause in two Counts. Count I was for rescission and Count II for breach of fiduciary relationship. Appellant filed his Answer and Counter–Claim on March 20, 1995, and was not in default. The case was first set for trial on September 28, 1995. The day before trial, appellant filed a bankruptcy petition in Florida. Respondents obtained an "Order Granting Motion for Relief from Automatic Stay" from the United States Bankruptcy Court for the Southern district of Florida to proceed to trial. On December 6, 1995, the trial court granted appellant's trial counsel's motion to withdraw. The case was ultimately set for trial without a jury on February 1, 1996.

On or about January 29, 1996, appellant filed his *pro se* Motion for Continuance, accompanied by an unverified letter from his doctor, advising the trial court that appellant was suffering from advanced acute prostate hypertrophy and that it was not advisable that he travel to Missouri for trial. After the trial court denied this motion, appellant filed a motion for reconsideration on January 30, which was also denied.

On February 1, 1996, respondents appeared with counsel for trial, but appellant did not. On the same day, after considering the evidence presented by respondents, the trial court signed a judgment entry, provided by respondents' counsel, which, *inter alia,* ordered the "Memorandum" of appellant filed with the recorder of deeds "to be of no further force or effect and stricken." The trial court in its judgment entry also ordered the Joint Development Agreement rescinded and awarded to respondents restitution in the amount of $53,551.37 and attorneys' fees in the amount of $39,258.23. *Id.*

On March 1, 1996, appellant filed his motion for new trial, after retaining counsel, with the sole issue raised that the trial court erred in not sustaining his motion for contin-

uance. *L.F.* 95–97. After denial of his motion for new trial, appellant filed a timely notice of appeal. *L.F.* 159.

## I.

In Point I, appellant claims the trial court erred in denying his motion for continuance. Appellant contends that it was an abuse of discretion for the trial court to deny his motion in that in doing so the trial court denied him his right to a fair trial on the merits and the special protection of that right afforded to nonresidents under Rule 65. We disagree.

■ Rule 65 governs continuances in civil cases. Rule 65.01 provides that a continuance can be granted for "good cause shown." The grant or denial of an application for continuance, even one premised upon the illness of a party, rests within the sound discretion of the trial court. *In re Marriage of Frankel,* 550 S.W.2d 896, 898 (Mo.App. 1977); *see also Nixon v. Director of Revenue,* 883 S.W.2d 945, 946 (Mo.App.1994). No abuse in denying the continuance will be found unless the appellate court finds the trial court acted arbitrarily or capriciously. *Nixon,* 883 S.W.2d at 946. In determining whether the trial court acted arbitrarily or capriciously, the court's decision will be given every favorable intendment. *Id.* at 946; *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 207 (Mo. banc 1991). The denial of a continuance is rarely reversible error. *Frankel,* 550 S.W.2d at 898; *Blessing v. Blessing,* 539 S.W.2d 699, 702–703 (Mo.App.1976). "Only in extreme cases where it clearly appears that the moving party ... is free of any dereliction," will an appellate court find an abuse of discretion in denying a motion for continuance. *Wright v. Price,* 871 S.W.2d 12, 14 (Mo.App.1993).

■ Appellant argues that the trial court abused its discretion in denying his motion for continuance in that he was physically unable to travel to Missouri from Florida for trial on February 1, 1996, because he was suffering from "acute prostatic hypertrophy." Appellant attached to his pro se motion for

continuance a letter from his doctor indicating he had advised appellant not to travel. The letter was not in affidavit form. On his motion for new trial, appellant introduced evidence by way of a doctor's affidavit that on February 23, 1996, he underwent surgery for his condition and that he could travel to Missouri for trial after March 31, 1996. Although the surgery occurred on February 23, 1996, the doctor's affidavit indicated that he advised the appellant to seek "emergency" care on January 30, 1996.

The trial court in denying appellant's initial motion and motion for reconsideration enumerated instances of what the court perceived to be delay tactics by the appellant. The list included the following: failure to appear for his deposition; withdrawal of his attorney; and, the filing of bankruptcy. After denying appellant's motion for new trial, the sole basis for which was the court's denial of appellant's application for continuance, the trial court stated that:

> I'm not saying he wasn't ill. I'm not saying that. I'm not accusing his doctor of anything. He may very well have been ill. He may very well have been unable to travel. *But, I wasn't, number one, convinced of it.* Secondly, he ignored the other possibilities that I gave him such as having you here on his behalf on February 1st or Mr. Jensen or one of the other attorneys that he had contacted at one time or another who had contacted counsel although I don't think they ever entered their appearance.

*Supp. Tr.* 10. From this and the court's denial of appellant's application for continuance and motion for new trial, we can infer that the trial court found that the appellant: 1. was able to travel, but elected not to travel to Missouri in an attempt to further delay the trial of his case; and, 2. ignored the opportunity to have counsel present for trial.[1] Although the trial court indicates it was not accusing appellant's doctor of "anything," it is apparent from its statement that the court did not find the doctor's letter to be totally credible, which is within its discretion.

---

1. It should be noted that the doctor stated it was "advisable" that appellant not travel to Missouri for trial. He never stated that he was "unable" to do so.

*McLain v. Johnson,* 885 S.W.2d 345, 348 (Mo.App.1994).

In support of his argument here, appellant cites us to *Anderson v. Anderson,* 669 S.W.2d 624 (Mo.App.1984). *Anderson* is distinguishable on the facts. In *Anderson* the court reversed and remanded for a new trial finding that the trial court had abused its discretion in not granting a continuance where the appellant was not only in the hospital at time of trial, but only had four days, two of which were Saturday and Sunday, between withdrawal of counsel and trial. The court held that it was a combination of these circumstances that necessitated the continuance. Here, we do not have a combination of such circumstances.

Regardless of whether the trial court believed that appellant was physically unable to travel, appellant had from December 6, 1995, when his counsel withdrew, to February 1, 1996, when the trial occurred, to obtain new counsel, but did not. Common sense and logic would indicate that 56 days is sufficient time to obtain new counsel, especially when there is nothing in the record to indicate anything to the contrary.

The characterization by the trial court of the appellant's actions as being delay tactics is reasonable under the totality of the circumstances. *See Seabaugh,* 816 S.W.2d at 207. Giving the trial court's decision to deny appellant's motion for continuance every favorable intendment, we cannot say the court acted arbitrarily or capriciously in denying his motion for continuance.

Appellant also argues that he should be accorded special consideration under Rule 65 because he is a nonresident. Rule 65.02 provides that "[t]he court shall grant such continuance to a nonresident defendant **as may be proper** to afford a reasonable opportunity to defend." (Emphasis added). The record reflects that the trial of this matter was originally set for September 28, 1995. The record would also reflect that the case was continued when appellant filed bankruptcy the day before trial. Thereafter, appellant's counsel was allowed to withdraw at his request and with appellant's consent on December 6, 1995. Nonetheless, appellant still failed to retain counsel to represent him at

trial. Upon such facts, we cannot find that the trial failed to afford appellant a reasonable opportunity to defend by denying his motion for continuance.

Point denied.

## II.

Appellant contends that the trial court abused its discretion in denying his motion for new trial in that in doing so he was denied a fair trial on the merits inasmuch as he was unable to be present at trial. In support of his contention, appellant argues that it was an abuse of discretion to deny his motion because he had a meritorious defense which he was unable to present and was granted "special protection" as a nonresident under Rule 65.02. We disagree.

"The trial court has broad discretion in awarding a new trial, the exercise of which will not be disturbed unless that discretion was abused, particularly in cases tried without a jury." *VonSande v. VonSande,* 858 S.W.2d 233, 236 (Mo.App.1993); (cites omitted). The sole basis for appellant's motion for new trial was the failure of the trial court to grant him a continuance thereby denying him a "trial on the merits." In other words, the appellant, as argued by respondent and as recognized by the trial court, was seeking to accomplish by his motion for new trial that which he was unable to accomplish by his motion for continuance. Thus, inasmuch as we have already determined in Point I that the trial court did not abuse its discretion in denying appellant's motion for continuance, we likewise find the trial court did not abuse its discretion in overruling appellant's motion for new trial.

Assuming arguendo that the trial court did abuse its discretion in overruling appellant's motion for new trial, his argument on this point still fails. "While appellate courts are more liberal in upholding the sustaining of a motion for new trial than in denying it, nevertheless, error complained of must be prejudicial to the party seeking the new trial." *Id.* at 236. Thus, regardless of whether the trial court abused its discretion in denying appellant's motion for new trial, if appellant cannot demonstrate prejudice in the denial of

his motion, he is not entitled to the appellate relief he seeks.

■ As noted above, the sole basis for appellant's motion for new trial is the failure of the trial court to grant him a continuance thereby denying him a "trial on the merits." Appellant is apparently confused as to what constitutes a trial on the merits. As discussed in *Moore Enterprises v. Franklin Newspapers, Inc.*, 716 S.W.2d 907 (Mo.App. 1986):

> At the outset we draw a distinction between a default judgment and a judgment rendered after defendant has filed pleadings but fails to appear at trial. A judgment taken after a defendant files pleadings is not a default judgment but a judgment on the merits. *Id.* at 908; (cite omitted).

Although not present for trial, appellant filed a timely answer and was not in default. *Harvey v. Village of Hillsdale*, 893 S.W.2d 395, 398 (Mo.App.1995). Therefore, his reliance on appellate decisions involving default judgments which discuss the existence of a meritorious defense as a basis for continuance is misplaced. Contrary to the appellant's assertion, the trial court did conduct a trial on the merits and entered a judgment on the merits. Thus, appellant is in error when he contends that he was denied **a trial on the merits** by the trial court's failure to sustain his motion for new trial. As a result, the trial court's denial of his motion, if in fact error, was not prejudicial error.

Appellant, as he did in Point I, argues special protection under Rule 65.02 requiring the trial court to sustain his motion for new trial. As we found in Point I above, the trial court, as required by Rule 65.02, did afford him a reasonable opportunity to defend.

Point denied.

### Appellate Review of Points III, IV, and V

■ Before we address the merits of appellant's points III, IV, and V, we must first address respondents' contention that because these points address issues not raised at trial, they cannot be considered on appeal. Appellant misinterprets respondents' contention and first defends on the basis that Rule 73.01(c) allows an appellate court to consider issues not raised in a motion for new trial. This is not respondents'. claim. Here, respondents' claim that appellant is seeking review of issues that were not raised at trial, as opposed to not being raised in a motion for new trial. In *Miller v. Pool and Canfield, Inc.*, 800 S.W.2d 120 (Mo.App.1990), the court recognized that "[a]lthough Rule 73.01(c) permits an appellate court to gather and review admissible evidence proffered by a party but rejected by the trial court, an appellate court may not address issues not raised at trial." *Id.* at 123–124. Thus, Rule 73.01(c) offers no sanctuary for appellant on respondents' contention that the issues raised in his points III, IV, and V were not preserved for appellate review because they were not raised at trial.

■ Appellant also defends on the basis that regardless of whether Rule 73.01(c) permits review of the issues in question, the issues, by their very nature, were raised at trial and addressed by the trial court in its judgment and, as such, were preserved for appellate review. We agree.

In Point III, appellant claims that the trial court erred in rescinding the joint development agreement of the parties and awarding money damages for breach in that the two were inconsistent. Pursuant to the pleadings, the issue of rescission was clearly before the court. This is an issue that obviously had to be addressed before the court could enter its judgment for rescission and restitution.

In points IV and V, appellant claims there was insufficient evidence to support the court's judgment for rescission and breach of a fiduciary relationship respectively. These issues were pled, were before the court, and necessarily had to be addressed by the trial court before it could enter its judgment. Inasmuch as the claims in points III, IV, and V, on which appellant predicates error, were before the court to decide at trial, they are subject to appellate review. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982).

## III.

In Point III appellant claims the trial court erred in rescinding the development agreement of the parties and awarding damages for breach of contract, which are mutually exclusive remedies. He contends that although the petition was pleaded in two counts with Count I being for rescission and Count II for breach of fiduciary duty, the judgment was a single judgment that "comingled" rescission and damages for breach. We disagree that the trial court's judgment entry did not properly provide for rescission as pleaded by respondents, but would agree to the extent the trial court awarded sums pursuant to rescission not properly characterized as restitution.

■ Damages on the contract and rescission are **alternative remedies** for breach of contract, which can be pleaded in the same petition. *Trien v. Croasdale Constr. Co., Inc.,* 874 S.W.2d 478, 481 (Mo.App.1994); *Stram v. Miller,* 663 S.W.2d 269, 277 (Mo. App.1983). The first is a legal remedy, for money damages, and the other an equitable remedy, for rescission of the contract, "a classical case of irreconcilable inconsistency." *Trien,* 874 S.W.2d at 481. The first proceeds upon the affirmance of the contract, and the second its disaffirmance. *Id.* Although both remedies can be pleaded in the same petition, respondents cannot obtain both damages on the contract and rescission, which depends on rejection of the contract as written. *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 86 (Mo. banc 1989), *cert. denied,* 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989). Thus, at some point an election must be made between rescission and damages on the contract. *Trien,* 874 S.W.2d at 481.

Appellant in his brief asserts that the judgment of the trial court was not responsive to the claims pleaded in respondents' petition. We disagree. Respondents' petition in Count I clearly pleads a breach of contract requesting recession and restitution. In Count II, respondents pleaded a breach of fiduciary duty and damages thereon. In its judgment, the trial court ordered that "the Joint Development Agreement dated November 3, 1993, is hereby rescinded" and that "judgment is entered in favor of plaintiffs [ ] and against defendant Desisto for *restitution* in the amount of *$53,551.37.*" (emphasis added). The rest of the judgment entry is consistent with rescission and the award of restitution, except the award of "reasonable attorneys' fees pursuant to the terms of the Joint Development Agreement" and paragraphs 7 and 8 which reference respondents' claim of breach of a fiduciary duty under Count II.[2] The trial court adds to the confusion by its remarks on the record just prior to signing its judgment entry, most notably when the court stated:

> Further the Court is finding judgment against the defendant on the plaintiffs' petition in the sum of $53,551.37 in actual damages enforceable in the eyes of the Court through the contract as well as an additional sum of $39,285.23 for attorney's fees. *Tr.* 55.

### A. Inconsistent Language of Judgment Entry

■ "When a conflict exists within the text of a court order, the portion of the order

---

2. 7. The Court also finds that the Joint Development Agreement between the Co–Trustees and Desisto constituted a joint venture whereby Desisto stood in a fiduciary relationship with the Co–Trustees and owed the Co–Trustees and the Trust the utmost good faith and duty to disclose all pertinent information pertaining to the joint venture.

8. The Court finds that Desisto breached his fiduciary duties owed to the Trust in that he attempted to convert for his own use assets which were the property of the Trust, caused development work to be done at a cost considerably in excess of the amount normally charged for the same work by other contractors, failed to inform the Co–Trustees of financial liabilities, liens and judgments filed against him personally and his corporations which rendered his performance of the Joint Development Agreement impossible, failed to inform the Co–Trustees he had moved to Florida and caused to be recorded with the Recorder of Deeds a "Memorandum of Joint Development Agreement Pertaining to Real Estate" which attempted to affect the Trust's title to Phase III despite his actual knowledge that the Trust had terminated the Joint Development Agreement and his rights thereunder. The Memorandum of Joint Development Agreement Pertaining to Real Estate purports to cover the following described real estate:

All Lots in Phase III, BEACON HILL–Third Plat, a subdivision in Kansas City, Clay County, Missouri.

wherein the court gives its imprimatur or exercises its power trumps inconsistent language appearing elsewhere in the order." *Jacobs v. Georgiou*, 922 S.W.2d 765, 770 (Mo. App.1996). Here, except for the language in the paragraph awarding attorney's fees, which we will address separately *infra*, the language in the remaining paragraphs of the judgment containing the court's orders is consistent with rescission and restitution as pled by respondents and is, therefore, controlling. Thus, this is not a case of the trial court's judgment failing to identify on which claim or remedy pleaded the court is awarding judgment requiring reversal, which was the situation that existed in *Belisle v. Miceli*, 758 S.W.2d 465, 467 (Mo.App.1988), cited by appellant in support of his claim under this point. See *Harvey*, 893 S.W.2d at 395. From the pleadings and the controlling language of the judgment entry, which was provided by respondents' counsel for the court's signature, we find respondents clearly pleaded and were proceeding on rescission and that the trial court entered judgment for the same.

## B. Inconsistent Reason for Judgment— Correct Result

As noted *supra*, prior to signing its judgment entry, the trial court on the record stated reasons for its judgment which were inconsistent with its order of rescission and restitution. This is not fatal to the judgment. In a court-tried case, where there are no findings of fact or conclusions of law, all issues are to be deemed found in accordance with the result reached and the judgment affirmed if it could be rendered on any reasonable theory. *Osterberger v. Hites Constr. Co.*, 599 S.W.2d 221, 225 (Mo.App. 1980). On appeal, we accept as true all evidence and permissible inferences favorable to respondents, the prevailing parties, and disregard any contradictory evidence. *Id.* A correct result will not be disturbed on appeal merely because the trial court gave a wrong or insufficient reason for its judgment. *Harvey*, 893 S.W.2d at 398. Having already found that the court's judgment entry was for rescission and restitution, the question then becomes whether rescission was a correct result, regardless of the court's stated reason for its judgment.

In a court-tried civil case, the judgment of the trial court will be affirmed, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law. *Brownstein v. Rhomberg–Haglin and Assocs., Inc.*, 824 S.W.2d 13 (Mo. banc 1992); *Cunningham v. Hughes*, 889 S.W.2d 864 (Mo.App.1994). The credibility of witnesses and the weight to be given their testimony in a court-tried case is a matter for the trial court, which is free to believe all, part, or none of the testimony of any witness. *McLain*, 885 S.W.2d at 348. In determining the sufficiency of the evidence, we accept as true evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 868 S.W.2d 118 (Mo. App.1993).

The trial court set forth in paragraphs 6 and 9 of its judgment entry the bases for its finding of breach by appellant upon which its order of rescission is predicated. These paragraphs are as follows:

6. Defendant Desisto breached the Joint Development Agreement with the Co–Trustees in several respects, which included the following: he did not complete the development of Phase III in a timely and workmanlike manner, he failed to administer all contracts necessary for the development of Phase III, he failed to approve payments for materials or services that were required and he failed to keep the Co–Trustees apprised in a timely manner of all relevant matters with respect to the development of Phase III. Specifically, Desisto never informed the Co–Trustees that he had moved from the State of Missouri and had become a legal resident of Florida such that it would affect his ability to perform his obligations under the Joint Development Agreement. He also failed to inform the Co–Trustees that he and his corporations had extensive financial liabilities and numerous liens and judgments against them which would prevent Desisto or his corporations from performing his

obligations under the Joint Development Agreement, namely constructing residences on Phase III.

9. The Court also finds that Desisto has rendered the performance of his obligations under the Joint Development Agreement impossible because he has moved from Missouri to Florida and because the financial condition of Desisto and his corporations makes it impossible for him to construct residences on Phase III as contemplated by the Joint Development Agreement.

L.F. 91–L.F. 91–92. "Generally, the remedies for breach of contract are for damages, **for restitution and rescission** or for specific performance." *Stram,* 663 S.W.2d at 277 (emphasis added). " 'A party to a contract may, in certain instances, elect to rescind upon a breach by the other party.' *McCullough v. Newton,* 348 S.W.2d 138, 142 (Mo. 1961)." *Ballenger v. Castle Rock Bldg. Corp.,* 904 S.W.2d 62, 64 (Mo.App.1995). "To justify a rescission, the breach 'must relate to a vital provision going to the very substance or root of the agreement, and cannot relate simply to a subordinate or incidental matter.' *B & B Equip. Co. v. Bowen,* 581 S.W.2d 80, 85–86 (Mo.App.1979)." *Id.*

 "When performance of a duty under a contract is due any non-performance is a breach." RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1979). Here, the agreement provides that appellant was "to act as a general contractor to complete the development of Phase III in a **timely** and workmanlike manner" and "to administer all contracts relating to the development of Phase III and approve payments for materials and services and obtain required lien waivers and releases[.]" (L.F.90). (Emphasis added.) "Timely" was not defined in the agreement. When no time is specified in the agreement, performance must be made within a reasonable time. *Ballenger,* 904 S.W.2d at 65.

Because the appellant was not present at trial, the only testimony the trial court had before it concerning appellant's "timely" performance as the general contractor was that of respondent, Russell C. Harris, Jr. The trial court was free to believe all, part, or none of his testimony. *McLain,* 885 S.W.2d at 345. On the issue of timeliness, Mr. Harris testified that it was his understanding construction of homes was to start in August of 1994. He further testified that appellant advised him that "all the lots would be sold by August and the construction—he would begin construction as soon as the development was completed and accepted by Kansas City," *Tr.* 28, which would be evinced by the filing and the acceptance of the plat. Mr. Harris further testified that he relied on this time table in entering into the agreement. Mr. Harris further testified that appellant abandoned his duties as general contractor and left it to Mr. Harris to serve as such. In that regard, Mr. Harris testified that appellant, after moving to Florida, refused to deal with the subcontractors, and that he, Mr. Harris, was required to administer contracts, including accepting bids, and obtaining plats, lien waivers, and permits from the city and county. It was these actions that allowed the plat to be ultimately filed. As long as the appellant failed to perform his duties as general contractor, the plat could not be filed and the development accepted by the city, effectively preventing the sale of lots and construction of homes starting in August. It was in August when he believed that appellant was not going to perform that Mr. Harris jumped-in and began serving as a substitute general contractor. It was obviously in respondents' best interest for him to do so rather than sit idly by allowing the development to stall and further interest to accrue on the development loan. From the testimony of Mr. Harris, the trial court could infer that appellant was not performing in a "timely" manner or within a reasonable time frame as required by the agreement and had breached it by his non-performance.

Having found there was a breach, the issue then becomes whether the record supports a finding of a breach relating to a vital provision of the agreement which would support rescission. In that regard, respondent, Russell C. Harris, Jr., testified that he entered into the Joint Development Agreement as an investment. He further testified that, unlike appellant, he could provide the financing for the project, whereas, appellant, unlike respondent, could provide his expertise as a

contractor. The record would reflect that the trial court found the appellant completely abandoned his duties as the general contractor for Phase III. Common sense tells us that the provisions of the agreement as to appellant serving as the general contractor for the development were vital to the agreement of the parties. Thus, this abandonment constituted a breach which went to the "root" of the agreement sufficient to support rescission.

Appellant further attacks the correctness of the trial court's order of rescission in Point IV *infra*. Thus, before we can finally determine whether the court's order of rescission was correct in spite of the inconsistent reasons stated, we must address appellant's claims in Point IV. Having done so, we will then address the remaining portion of appellant's claim under this point regarding the appropriateness of the "restitution" awarded by the trial court.

**IV.**

In this point, appellant claims generally that the alleged breaches of appellant were not material in nature and did not support an order of rescission. We have already addressed that issue in Point III above and ruled contrary to appellant's claim. In this point, appellant also raises three specific subclaims as to why it was error for the trial court to order rescission of the agreement. We will address each one separately.

**A. Substantial Performance Barring Rescission**

Appellant first contends that the trial court erred in ordering rescission in that **he** had substantially performed under the agreement. We disagree in that the record would not support a finding by the trial court that appellant substantially performed under the agreement.

██ In support of this contention, appellant cites us to *Iota Management Corp. v. Boulevard Inv., Co.*, 731 S.W.2d 399, 415 (Mo.App.1987). In *Iota*, the court, utilizing a Restatement of Contracts analysis, recognized that one of the six factors to consider in determining whether rescission is appro-

priate is "[t]he extent to which the party failing to perform has already partly performed or made preparations for performance." *Id.* at 415. Appellant relies on the fact that prior to respondents' termination notice, the subdivision plat had been filed, which according to the terms of the agreement evidenced completion of the development phase. Appellant argues that this, coupled with his assertion that he was in the process of negotiating contracts for sale of development lots, is proof that he had substantially and timely performed under the agreement rendering rescission at such juncture inappropriate under a Restatement analysis.

It is arguable that appellant is correct in his assertion that the plat was filed before respondents terminated the agreement, but such argument ignores the fact the trial court found and the record would reflect that the filing of the plat was not the result of appellant's efforts, but the efforts of respondent, Mr. Harris, acting as general contractor in light of appellant's non-performance and breach. Under such circumstances, appellant cannot argue that he had substantially performed under the agreement when it is obvious that Mr. Harris had performed in his stead. Logically, under a claim of substantial performance, appellant cannot claim the benefits of respondents' efforts precipitated by appellant's breach as a basis for avoiding the effect of the breach. At most, he can only assert some sort of waiver theory of the breach as a result of respondents' actions, which is his next contention.

**B. Waiver of Alleged Breach Prior to Filing of Plat and Insufficient Evidence Supporting Finding of Alleged Anticipatory Breach**

Appellant first contends that the alleged abandonment by appellant of his general contractor duties was a "prior breach [ ] [which] pre-date[d] the filing of the plat and therefore, [was] waived or satisfied by the filing of the plat which, according to the terms of the Joint Development Agreement, evidenced completion of Appellant's [required] performance in developing the property." *App. Br.* 23. We disagree that the

filing by respondents of the plat constituted a waiver or satisfaction of the breach by appellant.

As admitted by appellant in his brief, there was no direct evidence before the trial court as to when the plat was filed. However, appellant infers from Mr. Harris' testimony that the plat had to have been filed sometime between October 11 and November 11, 1994, November 11 being the date of respondents' certified letter to appellant that they were terminating their agreement for alleged breaches and anticipatory breaches of the agreement. Respondents filed suit on January 12, 1995.

■ As a general proposition, an innocent party may waive a breach of contract by words or conduct. RESTATEMENT (SECOND) OF CONTRACTS § 246 cmt. a, (1979); S.S. Silberblatt, Inc. v. Seaboard Sur. Co., 417 F.2d 1043, 1054 (8th Cir.1969). In determining whether respondents waived appellant's alleged breach, we must look at the totality of the circumstances. We will not find a waiver if we determine from the totality of the circumstances that the filing of the plat by respondents did not constitute a waiver or satisfaction of the breach.

■ As found supra, appellant's non-performance as a general contractor was a total and material breach of the agreement that went to the root or substance of the agreement. Respondents advised appellant on November 11 that it considered his non-performance a total breach for which they were terminating the agreement. There is nothing in the record, including the filing of the plat, from which it could be inferred that respondents accepted continued performance by appellant in his capacity as general contractor. As found supra, the filing of the plat was done in direct response to appellant's breach and in an effort to mitigate damages. Under the totality of the circumstances here, we cannot find that the filing of the plat by respondents was in any way an indication that they believed they were bound to perform under the agreement or that appellant's further performance under the agreement would be required. Thus, there was no waiver or satisfaction by respondents of appellant's breach.

Appellant next contends in this sub-point that the trial court erred in ordering rescission in that its order was based upon anticipatory breach of the agreement which was not supported by the evidence. Appellant directs us to paragraph 9 of the judgment entry which provides:

The court also finds that Desisto has rendered the performance of his obligations under the Joint Development Agreement impossible because he has moved from Missouri to Florida and because the financial condition of Desisto and his corporations makes it impossible for him to construct residences on Phase III as contemplated by the Joint Development Agreement.

Having already found a material breach by appellant sufficient to support rescission, we need not address the sufficiency of these enumerated anticipatory breaches as a basis for the rescission.

## C. Respondents Prevented Performance by Appellant

In this sub-point, appellant essentially and generally contends that respondents were guilty of "maneuvering" to deny him "his opportunity to profit from his efforts under the Joint Development agreement." This is nothing more than an argument concerning the motivation of respondents in terminating the agreement. Having already decided supra that respondents were justified in terminating the agreement because of appellant's failure to timely perform as the general contractor under the agreement, we need not address this claim of appellant.

Having addressed the claims of appellant as to why rescission should not have been granted in this case, we conclude that the result reached by the trial court in this case was correct. Thus, appellant's claim in Point III supra that the trial court's stated reasons for its judgment were inconsistent with rescission is without merit in that the result of rescission was nonetheless correct. Harvey, 893 S.W.2d at 398.

We now must address appellant's claim in Point III that the restitution awarded contained amounts not properly characterized as such.

### Restitution

 "Rescission of a contract extinguishes it as effectually as if it had never been made, and restores the parties to the positions they occupied before the contract was executed." *Phillips v. Bradshaw,* 859 S.W.2d 232, 235 (Mo.App.1993). In restoring parties to the positions they occupied before the contract was executed, courts of this state have recognized that an award of restitution to the innocent party is appropriate. *Iota Management,* 731 S.W.2d at 399; *Harris,* 766 S.W.2d at 80; *Osterberger,* 599 S.W.2d at 230. "Restitution" is defined as the "restoration of status quo and is the amount which would put plaintiff in as good a position as he would have been if no contract had been made, and restores to plaintiff the value of what he parted with ..." Black's Law Dictionary 1313 (6th Ed.1990).

As to monetary awards, the trial court entered the following orders:

IT IS FURTHER ORDERED, that judgment is entered in favor of plaintiffs Russell C. Harris, Jr. and Hannelore I. Harris as Co–Trustees of the Hannelore I. Harris Trust and against defendant Desisto for restitution in the amount of *$53,551.37;*

IT IS FURTHER ORDERED, that plaintiffs are entitled to reasonable attorneys' fees pursuant to the terms of the Joint Development Agreement in the amount of *$39,285.23*

*L.F.* 94. We will first address the award of restitution of $53,551.37.

 As appellant correctly points out in his brief, although the trial court in its judgment characterized the award of $53,551.37 as restitution, in its findings the court stated it was "finding judgment against the Defendant on the Plaintiff's Petition **in the sum of $53,551.37 in the actual damages enforceable in the eyes of the Court through the contract** as well as an additional sum of $39,285.23 for attorney's fees." *Tr.* 55; (emphasis added). This would seem to indicate that the $53,551.37 was actually an award of damages on the contract, not restitution. As noted *supra,* "[w]hen a conflict exists within the text of a court order, the portion of the order wherein the court gives its imprimatur

or exercises its power trumps inconsistent language appearing elsewhere in the order." *Jacobs,* 922 S.W.2d at 770. Consequently, the language in the judgment awarding "restitution" is controlling. We accept the fact the trial court intended to award restitution in the amount of $53,551.37. The issue then becomes whether the award was properly awarded as restitution.

 $21,125.62 of the award were expenses directly related to the development which enabled respondents to file the plat so lots could be sold and construction commenced, at which time profits could be realized. The remaining $32,425.75 represented one-half of the interest paid by respondents on the development loan and the property purchase loan which under the agreement was to be paid equally by the parties. The trial court erred in awarding these sums as restitution.

 Obviously, one cannot seek damages under the contract, yet seek the benefits of rescission. This is the rationale of requiring an election of remedies, to prevent a double satisfaction or recovery. *Petrie v. LeVan,* 799 S.W.2d 632 (Mo.App.1990). Respondents in an election of remedies chose rescission over damages on the contract. As such, they chose to keep the benefits from the development and eschew any damages they may have been entitled to under the agreement such as the expenses and interest in question. In doing so, they obviously believe they could realize profits on the sale of the development lots in excess of $4,000. Under their agreement, respondents were seeking to realize $4,000 profit on the sale of each lot. This profit would be calculated after taking into consideration the expenses and interest in question. By choosing rescission over damages on the contract, respondents will now receive all profits from the sale of the lots. As such, they have the opportunity to realize profits in excess of $4,000 per lot. By choosing rescission, respondents are betting that profits will exceed $4,000 per lot. Such is their choice. The fact they might receive more than that which they contemplated under the agreement would allow them to reap the benefits of restitution while keeping the

benefits of the agreement. We cannot allow them to have their cake and eat it too by requiring appellant to insure their risk taking by contributing to the venture. If we were to allow restitution in this case to include the $53,551.37, the clear possibility of double satisfaction or recovery exists. We, therefore, reverse that portion of the judgment awarding restitution to respondents in the amount of $53,551.37. We next address the award of attorneys' fees as restitution.

 In its judgment, the trial court clearly awarded attorneys' fees "pursuant to the terms of the Joint Development Agreement in the amount of $39,285.23." Of course, this was error inasmuch as the contract was rescinded and no award could be made in reliance on a contract which no longer existed. However, if the award of attorneys' fees was proper as restitution, we will not disturb the award of the trial court because it failed to properly characterize it as restitution. As noted *supra*, a correct result will not be disturbed on appeal merely because the trial court gave a wrong or insufficient reason for its judgment. *Harvey*, 893 S.W.2d at 398. It is the "correctness" of this award as restitution appellant challenges, not the reasonableness of the fees awarded.

 "Missouri courts have historically adhered to the 'American rule' that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits." *Nix v. Nix*, 862 S.W.2d 948, 952 (Mo.App.1993). Attorneys' fees as "restitution" would logically fall within category four.

 A total of $39,285.23 was awarded in attorneys' fees, of which $35,843.50 was awarded to Morrison & Hecker for representation in the lawsuit and $3,441.73 to the Florida law firm of Carlton Fields to lift the stay of bankruptcy proceedings in Florida so the underlying lawsuit could proceed. If "restitution" is defined as the "restoration of

status quo and is the amount which would put plaintiff in as good a position as he would have been if no contract had been made, and restores to plaintiff the value of what he parted with ..." Black's Law Dictionary at 1313, restitution in this case would include the attorneys' fees awarded. Consequently, we find the trial court reached a correct result in awarding attorneys' fees, but that the same should be properly characterized as restitution.

## Conclusion

Having determined that the trial court reached a correct result under Points III and IV as to rescission and awarding restitution in the amount of $39,258.23, we would reverse and remand only as to the $53,551.37 in restitution with the trial court to enter its amended judgment entry consistent with this opinion.

## V.

In Point V appellant claims the trial court erred in finding that the joint development agreement created a joint venture which in turn created a fiduciary relationship between the parties that was breached by appellant. We need not address this point, in that we have already affirmed the trial court's order rescinding the agreement for breach not predicated on a finding of the existence of a fiduciary relationship. Consequently, it is unnecessary to determine if a fiduciary relationship existed and whether its breach would be a basis for rescission.

## Conclusion

We affirm in part and reverse and remand in part. The judgment, insofar as it orders rescission of the Joint Development Agreement, is affirmed; the portion of the judgment awarding restitution in the amount of $53,551.37 is reversed; the portion of the judgment awarding attorneys' fees in the amount of $39,285.23 is reversed and remanded with attorneys' fees of $39,285.23 to be awarded as restitution and the trial court

to enter its amended judgment entry consistent with this opinion.

All concur.