# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 01-6003EM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Popkin & Stern | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Robert J. Blackwell | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Eastern District of Missouri |
| | * | |
| Michael Lurie and | * | |
| Ryan Lurie | * | |
| | * | |
| Defendants-Appellants, | * | |
| | * | |
| Ronald U. Lurie | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: June 5, 2001
Filed: June 27, 2001

_____

Before KRESSEL, WILLIAM A. HILL and O'BRIEN,[1] Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

---

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota, sitting by designation.

The defendants, Michael Lurie and Ryan Lurie, appeal from the order of the bankruptcy court[2] which awarded the defendants restitution for their interest in property that was sold at an execution sale pursuant to a fraudulent transfer judgment which was subsequently reversed. The bankruptcy court determined that, upon a reversal of judgment, an appellant is entitled to restitution in the amount actually received by the appellee, plus interest and taxable costs. Defendants argue that they are entitled to damages in the form of the fair market value of the property sold, plus interest and attorney fees. We affirm the decision of the bankruptcy court.

## BACKGROUND

The history of this case is set forth in the court of appeals' opinion in *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764 (8th Cir. 2000). In brief, Popkin & Stern was a law firm of which Ronald Lurie was a general partner. In 1992, an involuntary Chapter 7 bankruptcy petition was filed against Popkin & Stern. The case was converted to Chapter 11 and the appellee herein, Robert J. Blackwell, was appointed as the Chapter 11 trustee. In 1993, Blackwell was appointed the liquidating trustee under a Chapter 11 plan confirmed by the court.

On October 20, 1994, the trustee obtained a judgment against Ronald Lurie in the approximate amount of $1.1 million. Subsequently, the trustee brought a fraudulent transfer complaint against Ronald Lurie and his children, Michael Lurie and Ryan Lurie, seeking to avoid the transfer of real estate that Ronald Lurie was to have inherited from his mother, but for his disclaimer of the property which caused it to pass to the appellants instead. On August 18, 1998, the bankruptcy court entered judgment in favor of the trustee and set aside the transfer of the property to the appellants. We affirmed the bankruptcy court's decision.[3] However, the Eighth Circuit Court of Appeals reversed and remanded.[4]

---

[2] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[3] *Blackwell v. Lurie (In re Popkin & Stern)*, 234 B.R. 724 (B.A.P. 8th Cir. 1999).

[4] *Blackwell*, 223 F.3d 764.

At no time while the appeal was pending did the appellants seek a stay pending appeal, nor did they seek a supersedeas bond to stay execution on the property.[5] Thus, in December 1998, the trustee filed a writ of execution under the $1.1 million judgment against Ronald Lurie, and the sheriff sold his interest in the property to a disinterested third party for $420,500. After the sheriff's commission and expenses ($16,825) were deducted, the trustee received $403,675 from the sale.

The reversal by the Eighth Circuit occurred after the property was sold. In reversing, the court stated that the case was remanded "for further proceedings . . . to determine the amount of damages owed to Michael and Ryan for the loss" of their interest in the property.[6] On remand, the bankruptcy court agreed with the trustee that, under Missouri law, appellants' "damages" were limited to all benefits the trustee acquired under the erroneous judgment. Therefore, the court awarded appellants the amount the trustee actually received from the sale, $403,675, plus interest and taxable costs. Appellants argue on appeal that the bankruptcy court erred in failing to award them the fair market value of the property and their attorney fees.

## DISCUSSION

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000).

The trustee's action against the appellants, and thus the resulting judgment, was brought under Missouri's Uniform Fraudulent Transfer Act. The bankruptcy court and the parties assumed that Missouri law controls appellants' remedy for the reversal of that judgment. We need not determine whether federal or Missouri state law applies, as the result under either is the same.

### *Missouri Law*

The bankruptcy court correctly determined that, under Missouri law, "upon reversal of a judgment . . . the appellant is entitled to restitution from the respondent of all benefits acquired under the erroneous judgment during the pendency of an appeal." *De Mayo v. Lyons*, 228 S.W.2d 691, 692 (Mo. 1950);

---

[5] During oral argument, appellants' counsel claimed that he thought a stay may have been requested and denied. However, there is nothing in the record to support this claim and in fact, the record is contrary.

[6] *Blackwell*, 223 F.3d at 770.

*see Chaney v. Cooper*, 948 S.W.2d 621, 624 (Mo. Ct. App. 1997). This right to restitution exists even if it is not expressly ordered by the appellate court. *De Mayo*, 228 S.W.2d at 692. However, the "damages" which may be given for restitution "are not open-ended." *Lancaster v. Simmons*, 621 S.W.2d 935, 940-41 (Mo. Ct. App. 1981). Restitution, as a remedy for reversal of an erroneous judgment, is a proceeding in equity. *Int'l Ins. Co. v. Metro. St. Louis Sewer Dist.*, 938 F. Supp. 568, 571-72 (E.D. Mo. 1996); *Chaney*, 948 S.W.2d at 624). Thus, the appellant is not entitled to receive traditional "legal damages." *See Metro. St. Louis*, 938 F. Supp. at 571-72 (granting summary judgment in favor of insurer, whose policy excluded claims arising from non-"money damages," where the insured sought coverage for a credit-refund it was ordered to pay to customers as a result of a rate-increase ordinance being invalidated by the Missouri Supreme Court).

Accordingly, in ruling that appellants were entitled to the benefits received by the appellees under the erroneous judgment, the Missouri Supreme Court in *De Mayo*[7] held that appellants could recover the amount realized by the appellees from various sales of whiskey obtained under execution, plus interest from the date of the levy under execution, and taxable costs. *See De Mayo*, 228 S.W.2d at 692, 694. This is what appellants here were awarded (the amount realized by the trustee, plus interest, plus taxable costs), and that award was proper. Appellants erroneously cite *De Mayo* for the proposition that they are entitled to the fair market value of the property sold. This is a clear misstatement of *De Mayo's* holding. The use of a "reasonable market value" by the *De Mayo* court arose in the context of sales under the execution for which the judgment creditor could not establish the actual sale amounts. *See id.* at 694. For those sales only, the court held that appellants could recover the reasonable market value of the whiskey sold. *See id.*

Likewise, in *Lancaster*,[8] the appellant was awarded restitution in the amount actually received by the appellee, for rents, while he was in possession of property pursuant to a judgment that was subsequently reversed. *See Lancaster*, 621 S.W.2d at 937-39. Appellant argued on appeal that the trial court awarded him inadequate damages, asserting that the mandate of the appellate court required that he "be restored to all things lost by reason of [the original] judgment." *Id.* at 940. The appellant sought additional damages and the recovery of his attorney fees. Refuting appellant's arguments and citing *De*

---

[7] 228 S.W.2d 691.

[8] 621 S.W.2d 935.

*Mayo*[9] and *Hurst Automatic Switch & Signal Co. v. Trust Co.*,[10] the court held that the appellant was not entitled to recover attorney fees or other litigation expenses which were not taxable as costs, nor was appellant entitled to recover for speculative damages. *Lancaster*, 621 S.W.2d at 940-41.

Appellants cite one case, *Harris v. Desisto*, 932 S.W.2d 435 (Mo. Ct. App. 1996), in support of the argument that the trustee should pay their attorney fees. That case is inapposite. *Harris* concerned a party's remedies upon rescission of a contract, not the remedies available upon reversal of an erroneous judgment. *See id*. Appellants can point to no case where Missouri courts have awarded attorney fees as part of a restitution award following the reversal of a judgment. Indeed, no such case exists.

There is no support in Missouri law for awarding appellants the fair market value of the property sold. Rather, in accordance with well established Missouri law, they are entitled to the benefits actually received by the trustee under the erroneous judgment, together with interest from the date of the levy under execution and taxable costs. We hold that the bankruptcy court properly determined appellants' restitution award pursuant to Missouri law.

*Federal Law*

Under well-established case law, the outcome under federal law is the same. As stated by the Eighth Circuit Court of Appeals: "It is a long-standing legal principle that '[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable. . . .'" *Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) (alteration in original) (quoting Restatement of Restitution § 74 (1937)).

As indicated in *Mohamed*, courts have long looked to the Restatement of Restitution § 74 for guidance. *See Mohamed*, 91 F.3d at 1126. Comment d to the Restatement provides, in pertinent part:

> d. Restitution of money from judgment creditor. . . . If the debtor's property has been sold to a stranger and the proceeds paid to the judgment creditor, the judgment debtor is entitled to recover the amount

---

[9] 228 S.W.2d 691.

[10] 236 S.W. 58 (Mo. 1921).

> thus received by the judgment creditor with interest; unless the judgment was void, *he cannot recover the value of the property sold*, if the action was brought in good faith and the sale was properly conducted, since the creditor was acting lawfully.

Restatement (First) of Restitution § 74 cmt. d (1936) (emphasis added). An Illustration to this Comment provides:

> A obtains a judgment against B for $3000. Execution is levied on the judgment and B's property, to the value of $4000, is sold. Although the sale is properly conducted, the property brings but $3000 which is paid to A. The judgment is reversed for error of law. B is entitled to restitution from A of only $3000 with interest.

Restatement (First) of Restitution § 74 cmt. d, illus. 12 (1936).

Thus, courts have universally held that where a judgment is reversed, appellants are entitled to restitution of the benefits received by the other party (plus costs and interest), but to no more. *See, e.g., Kansas City So. Ry. Co. v. S. Trust Co.*, 279 F. 801 (8th Cir. 1922)*; U.S. Indus., Inc., v. Gregg*, 457 F. Supp. 1293, 1298-99 (D. Del. 1978), *aff'd,* 605 F.2d 1199 (3d Cir. 1979), *cert. denied,* 444 U.S. 1076 (1980). Under federal law, restitution is a remedy in equity, it is not a matter of right nor a proceeding for "money damages."[11] *See Atlantic Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309-310 (1935); *Mohamed*, 91 F.3d at 1126; *Metro. St. Louis*, 938 F. Supp. at 571.[12]

---

[11] Therefore, unlike Missouri law which views restitution following the reversal of an erroneous judgment as a matter of right, federal law does not. Instead, federal courts will not award restitution unless the appellant shows that equity will be offended if the appellee is allowed to retain what he received under the erroneous judgment. *See Mohamed*, 91 F.3d at 1126 (citing *Atlantic Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309-310 (1935)).

[12] Appellants claim that the Eighth Circuit has recognized that restitution extends beyond the benefits received by the appellee, and can include compensatory damages. For this proposition, they cite *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999). However, that decision has nothing to do with the issue in this case: the proper remedy to be awarded upon the reversal and remand of a judgment. The issue in *Kerr* involved a pension plan participant's remedies for the plan administrator's breach of fiduciary duty. *See id*.

Appellants also point to the Eighth Circuit's language in remanding this case "for further proceedings . . . to determine the amount of damages owed to [appellants] for the loss" of their interest in

In *Kansas City So. Ry.*, 279 F. 801, appellants sought the value of property sold pursuant to a later-reversed court decree. Noting that no supersedeas bond was obtained and that no objections to the sale or appeals therefrom existed, the Eighth Circuit Court of Appeals agreed with the conclusion of the trial judge that the only restitution appellants were entitled to was to apportion the purchase money received according to the parties' interests. *Id.* at 804-805. "Litigants cannot be penalized for errors of the court." *Id.* at 805.

In *Gregg*,[13] the victorious appellant claimed that he was entitled to recover not only the benefits received by the appellee under the erroneous judgment, but also the value of his interest in stock which was seized and sold under the judgment, plus the expenses he incurred including costs and attorney fees. Rejecting this claim, the district court stated:

> I have found no case in which a plaintiff, following reversal of an erroneous injunction, judgment, attachment, or other decree has received in restitution an amount greater than the value of the benefit which had been conferred upon his opponent as a result of the erroneous order.
> . . . .
> [T]o the extent that Gregg demands restitution of what he lost in the decline of the market value of his stock as a result of the erroneous orders of this Court, without regard to the benefit which USI received, the cases do not support his position.

*Gregg*, 457 F. Supp. at 1298-99. The court further observed that claims for recovery above the value of the benefit received under the erroneous judgment are generally treated by courts under different standards than claims for restitution. *Id.*, at 1299 (and cases cited therein). Notably, in order to award damages for a reversed judgment, courts generally require proof of malice or lack of probable cause in filing the original action. *See id.* No such proof, nor even an allegation by appellants, exists here.

---

the property. *See Blackwell*, 223 F.3d at 770. Clearly, however, the Eighth Circuit was using the term "damages" in the generic or general sense of the word; as it is plain from *Mohamed, supra*, and almost 100 years of federal case law, that in the Eighth Circuit it is settled that restitution of the benefits received by the appellee under an erroneous judgment is the proper remedy. *See Mohamed*, 91 F.3d at 1126. Moreover, the issue of appellants' remedy upon reversal was not an issue before the court in *Blackwell*. *See Blackwell*, 223 F.3d 764.

[13] 457 F. Supp. 1293.

Appellants complain that the liquidating trustee violated the Bankruptcy Code because he allegedly failed to sell the property in a commercially reasonable manner (e.g., he sold it at a sheriff's execution sale instead of listing the property with a broker). First, the record is devoid of any indication that this argument was raised or considered by the bankruptcy court, and we will not consider issues raised for the first time on appeal. *See Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 767 (B.A.P. 8th Cir. 2000). Second, appellants are simply wrong. The trustee was acting under his powers as a judgment creditor, not an owner of the property. The trustee had no ownership interest in the property. The sheriff properly sold the property under Missouri's execution laws. Had the trustee failed to execute on the property, where there was no stay pending appeal, it is likely that he may been in breach of a fiduciary duty owed to the creditors of *Popkin & Stern*.

There is simply no support, under either federal law or Missouri law, for awarding appellants the fair market value of the property sold nor attorney fees. Appellants assert that the result should be different here because appellants are "innocent third parties" who were deprived of their property by the trustee's execution sale. This is a *non sequitur*. Appellants were on the losing end of a bankruptcy court fraudulent transfer judgment which avoided the transfer of an interest in property to them. They failed to seek a stay pending appeal nor did the seek a supersedeas bond. The record shows that the trustee, acting as a judgment creditor under a writ of execution, properly sold the property to a disinterested third party at a sheriff's sale. We hold that the bankruptcy court properly determined the correct amount of restitution to be awarded to appellants for the loss of their one-half interest in the property sold pursuant to the judgment.

CONCLUSION

The judgment of the bankruptcy court is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.