Pamela S. FOSTER, Respondent,

v.

John C. FOSTER, Appellant.

No. WD 63919.

Missouri Court of Appeals,
Western District.

Nov. 23, 2004.

Ronald L. Jurgeson, Lee's Summit, MO, for appellant.

Les D. Wight, II, Independence, MO, for respondent.

Before: LISA WHITE HARDWICK, P.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. John C. Foster appeals from the trial court's judgment in a marital dissolution action. He challenges the trial court's decision to proceed with trial after he

failed to comply with the conditions attached to a continuance. He further challenges the trial court's judgment as it pertains to child custody and to the valuation of marital property. We conclude that the trial court attached reasonable conditions for the continuance and we affirm the trial court's distribution of marital assets. We further conclude, however, that the trial court's custody findings and parenting plan are inadequate, so we remand the case for further proceedings. Affirmed in part, reversed in part and remanded.

## I. Factual and Procedural Background

Ms. Pamela S. Foster filed for divorce from her husband, Mr. John C. Foster, in February 2003. The parties have two children from the marriage, twelve-year-old Derrick, and eight-year-old Andrew. In July 2003, Mr. Foster received a kidney transplant and experienced several complications afterwards. Trial was originally scheduled to begin on October 16, 2003. Claiming the need to postpone the trial due to his medical condition, Mr. Foster filed a motion for continuance on September 8, 2003. On October 10, 2003, the trial court addressed the motion during the pretrial conference. The trial court asked Mr. Foster's attorney for proof of Mr. Foster's condition and said:

Well, here's the thing. If the petitioner is going to oppose it, I want some kind of proof—and I don't mean you have to bring the doctor in here to testify live, but I want something in the form of medical records that will show that this guy's got a condition that he would be at risk if we went forward with the trial on this case.

Ms. Foster opposed the request for a continuance, citing her concern that Mr. Foster was neglecting the marital home by allowing other people to live there and by failing to make mortgage payments, thereby risking foreclosure. She further cited Mr. Foster's persistent failure to return a car belonging to her. Although the trial court concluded that "it would be an abuse of discretion for me to force [Mr. Foster] to go to trial if he's going to keel over and die in my courtroom," the court deferred ruling on the motion pending satisfactory proof of Mr. Foster's medical condition.

On October 14, 2003, the trial court reconvened and again considered Mr. Foster's continuance request. At that time, Mr. Foster presented medical records documenting his condition. Mr. Foster further informed the trial court that his doctors had scheduled a test that coincided with the first day of trial to diagnose a complication "of a somewhat urgent nature." Satisfied that Mr. Foster's medical condition was genuine, the trial court granted the continuance. At the same time, however, the trial court conditioned the continuance upon Mr. Foster allowing Ms. Foster to inspect the marital home and upon Mr. Foster returning Ms. Foster's car to her.

While Mr. Foster allowed Ms. Foster to inspect the home, he failed to return the car to her. When the trial court reconvened on October 16, 2003, Mr. Foster's attorney appeared but he did not appear. Mr. Foster's attorney said that he had been unable to contact Mr. Foster and did not know why Mr. Foster had not returned the car. He stated that he was not prepared to try the case and again requested a continuance. The trial court decided to proceed with trial and said:

Well, Mr. Foster was present in court and he heard the direction I made on October the 14th that I would continue the case provided that the vehicle be transferred to the petitioner. That seemed to me to be a reasonable compromise of the matter, understanding

the opposition that petitioner had made to the application for continuance. I don't know why he hasn't done that, but he was in court and he heard my order. He apparently has chosen to disobey that order with no excuse as to why he has. And I can only conclude from that that his disobedience to the Court's order is willful. I'm not going to reward him for purposefully evading the responsibilities I've imposed on him as a condition for continuing this matter. So we will proceed today.

Ms. Foster proceeded with her case. Afterward, the trial court rendered its judgment dissolving the marriage. In that judgment, the trial court awarded joint legal and physical custody of the children to both parents, with Ms. Foster's address being designated as the children's address for mailing and educational purposes. In its parenting plan the court specified that the children would reside with Ms. Foster "except at times when [Mr. Foster] provides suitable supervision of the children due to his medical condition." The trial court further specified that the supervision be subject to Ms. Foster's approval. In its judgment, the trial court also divided the marital and non-marital property.

Mr. Foster filed a motion for new trial challenging the trial court's decision to proceed with trial. The trial court denied the motion and Mr. Foster now appeals. Mr. Foster raises three points on appeal. First, he contends that the trial court abused its discretion in denying him a continuance because he demonstrated that he was unable to appear at trial due to his poor health. Second, he contends that the trial court erred in determining child custody. And third, he contends that the trial court erred in dividing the marital property based upon flawed valuations of property presented by Ms. Foster.

## II. Analysis

### A. The Trial Court Did Not Abuse its Discretion in Proceeding with Trial

The trial court has the power to grant a continuance "[f]or good cause shown." Rule 65.01. The grant or denial of such a continuance is largely within the trial court's discretion. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 207 (Mo. banc 1991). This is true even in cases where the request for a continuance is based upon a party's illness. *In re Marriage of Frankel,* 550 S.W.2d 896, 898 (Mo. App.1977). Only if we find that the trial court acted arbitrarily or capriciously will we find that the trial court abused its discretion. *Harris v. Desisto,* 932 S.W.2d 435, 439 (Mo.App. W.D.1996). When reviewing the trial court's decision for such an abuse of discretion, we give the trial court's decision "every favorable intendment." *Id.* "The denial of a continuance is rarely reversible error." *Id.* Reversal is warranted only in extreme cases where the party requesting the continuance is clearly free of any dereliction. *Id.*

Mr. Foster confuses the issue in his first point when he argues that the trial court abused its discretion in denying him a continuance despite his illness. The trial court did not deny Mr. Foster a continuance despite his illness. The trial court granted him a continuance because of his illness. As the trial court said, "this is about as good an excuse as I've had for a continuance. If a man's had a kidney cut out, that's not minor surgery, and I think there's good faith basis for the continuance."

The trial court simply granted the continuance on the condition that Mr. Foster return Ms. Foster's car to her before trial. The trial court acted within its discretion in attaching this reasonable condition to the continuance. *See* 17 C.J.S. *Continu-*

*ances* § 120 (1999) ("Independent of statutory authority, a court's discretionary power to grant or refuse a continuance generally includes the power to impose reasonable terms as a condition of granting one."). It was entirely reasonable to insist that Mr. Foster minimize the consequences of further delay as a condition of granting the continuance. And by failing to return Ms. Foster's car, Mr. Foster was not "free of any dereliction" such that reversal would be warranted here.

Although Mr. Foster claims that his medical condition "made compliance with the [trial court's] conditions nearly impossible," he cites nothing in the record to support this conclusion. We conclude that the trial court did not err in rescinding the continuance when Mr. Foster failed to comply with a reasonable condition. Point one is denied.

## B. Child Custody

### 1. Standard of Review

▮▮▮ We will affirm the trial court's child custody judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's child custody determination is entitled to great deference. As this court has said before:

> We give greater deference to the trial court's determination in child custody proceedings than in any other type of case. A trial court is vested with considerable discretion in determining custody questions, and appellate courts should not overturn the trial court's findings unless they are manifestly erroneous and the child's welfare compels a different result. The judgment must be

affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect. As long as the record contains credible evidence to support the trial court's beliefs, we will not substitute our judgment for that of the trial court.

*Wallace v. Chapman*, 64 S.W.3d 853, 858 (Mo.App. W.D.2002) (internal quotation marks and citations omitted).

▮▮▮ We view the evidence and its permissible inferences in the light most favorable to the trial court's ruling, disregarding all contrary evidence and inferences. *Johnson v. Johnson*, 839 S.W.2d 714, 717 (Mo.App. W.D.1992). "The trial court is in the best position to judge the credibility of the witnesses and may believe all, part or none of any witness's testimony." *Gant v. Gant*, 923 S.W.2d 527, 530 (Mo.App. W.D.1996). We defer to the trial court's decision even if the evidence could support a different conclusion. *Johnson*, 839 S.W.2d at 717. We further presume that the trial court reviewed all of the evidence and decided the matter in the children's best interests. *In re McIntire*, 33 S.W.3d 565, 568 (Mo.App. W.D.2000).

### 2. The Trial Court's Child Custody Findings and Parenting Plan are Inadequate

▮▮▮ Mr. and Ms. Foster each submitted proposed parenting plans that broadly endorsed joint physical and legal custody but differed about which parent should have a greater share of time with the children. Ms. Foster requested that the trial court designate her as the "primary physical custodian" while Mr. Foster requested that the trial court designate him as the "primary residential custodian."[1]

---

1. As we explained recently, these terms are misnomers; the question in all cases is simply whether physical custody is joint or sole.

*Loumiet v. Loumiet*, 103 S.W.3d 332, 338 (Mo.App. W.D.2003).

In its judgment, the trial court generally found that "the best interest of the minor children ... will be served by granting joint legal and joint physical custody to [Mr. and Ms. Foster], with [Ms. Foster's] residence being designated for mailing and educational purposes for the minor children, pursuant to the Parenting Plan set out herein." The court's parenting plan in turn repeated that both parents would exercise joint physical custody of the children, with Ms. Foster's address designated as the children's address for mailing and educational purposes. The parenting plan further specified that the children "shall reside with [Ms. Foster] except at times when [Mr. Foster] provides suitable supervision of the children due to his medical condition. Such supervision is subject to the approval of [Ms. Foster]."

Pursuant to Section 452.375.1

(3) "Joint physical custody" means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents;

The paramount consideration in any child custody determination is the best interests of the child. § 452.375.2; *Hankins v. Hankins*, 920 S.W.2d 182, 186 (Mo. App. W.D.1996). When determining what is in the best interests of the child, the trial court must consider eight relevant factors:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....

(7) The intention of either parent to relocate the principle residence of the child; and

(8) The wishes of a child as to the child's custodian.

§ 452.375.2.

The judgment as it relates to joint legal and physical custody is deficient. It essentially awards Ms. Foster sole physical custody and visitation for Mr. Foster at Ms. Foster's discretion. It does not meet the definition of joint physical custody set forth in section 452.375.1.

And where—as here—the trial court determines that the custody arrangement agreed to by the parties—in this case, joint physical custody—is not in the best interest of the child, the court must "include a written finding in the judgment or order based on the public policy in subsection 4 of [section 452.375] and each of the factors listed in subdivisions (1) to (8) of subsection 2 of this section detailing the specific relevant factors that made a particular arrangement in the best interest of the child." § 452.375.6.

Here, the trial court's custody award is contrary to the parties' broad agreement

that joint physical custody is in the best interest of the children because it effectively awards Ms. Foster all of the parenting time with the children for an undetermined amount of time and gives her a veto over Mr. Foster's subsequent exercise of his parenting time. The trial court was required to include written findings detailing the specific relevant factors that made this arrangement in the best interest of the children. § 452.375.6. Aside from very broadly indicating that the children "shall reside with [Ms. Foster] except at times when [Mr. Foster] provides suitable supervision of the children due to his medical condition," the court made no such findings here, hampering our review and requiring us to remand the case for the necessary findings.

 Any judgment providing for custody also must include "a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." § 452.375.9. Section 452.310.7 in turn specifies:

(1) A specific written schedule detailing the custody, visitation and residential time for each child with each party including:

(a) Major holidays stating which holidays a party has each year;

(b) School holidays for school-age children;

(c) The child's birthday, Mother's Day and Father's Day;

(d) Weekday and weekend schedules and for school-age children how the winter, spring, summer and other vacations from school will be spent;

(e) The times and places for transfer of the child between the parties in connection with the residential schedule;

(f) A plan for sharing transportation duties associated with the residential schedule;

(g) Appropriate times for telephone access;

(h) Suggested procedures for notifying the other party when a party requests a temporary variation from the residential schedule;

(i) Any suggested restrictions or limitations on access to a party and the reason such restrictions are requested. . . .

§ 452.310.7.

Again, the trial court's parenting plan fails to set forth the required statutory findings. The parenting plan does not include many of the terms mandated by section 452.375.9 and specified in section 452.310.7. On the subject of physical custody, the parenting plan simply declares that "[t]ime will be made around major holidays" and that "[t]he children shall have telephone access with both parents at reasonable times." This is insufficient and also requires remand so that the trial court may prepare a complete parenting plan consistent with the statutory requirements. *See, e.g., Simon–Harris v. Harris,* 138 S.W.3d 170, 181–82 (Mo.App. W.D. 2004).

## III. Valuation of the Marital Property

 In his third point, Mr. Foster argues that the trial court erred in distributing marital assets because Ms. Foster did not present any expert testimony or detailed written appraisals to justify her valuations of marital assets including a house, businesses, equipment, and used vehicles. While the trial court cannot accept a value for marital property that is not established at trial, the court nonetheless enjoys broad discretion in valuing marital property. *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App. S.D.2001).

Although Mr. Foster generally has identified the property in dispute, he has failed to identify any evidence regarding the actual valuation of this property, hindering review of his point. *See* Rule 84.04(i) ("All statements of fact and argument shall have specific page references to the legal file or the transcript."). He also has failed to cite any authority to support his argument on this point. Contrary to his argument, however, Ms. Foster was competent to testify to the value of the marital property. *Farley*, 51 S.W.3d at 164. ("As a general rule, the owner of property is competent to testify as to its value.") (internal quotation marks and citation omitted). *See also Weiss v. Weiss*, 702 S.W.2d 948, 954 (Mo. App. W.D.1986) (trial court was not required to accept or give greater weight to expert testimony over testimony of spouse regarding value of real property).

Mr. Foster did not object to the admission of the values listed in Ms. Foster's statement of marital property. Indeed, he cross-examined her using that very document. By contrast, he presented no evidence regarding the value of the marital property. "A complainant should not be rewarded for presenting insufficient evidence of property values." *Farley*, 51 S.W.3d at 165 (internal quotation marks and citation omitted).

Mr. Foster further argues that Ms. Foster based her valuation of the businesses upon their purchase price as well as the extensive amount of equipment that those businesses possess. Although Mr. Foster does not say so, it is true that the date for valuing property is the date of trial. *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987). In this regard, Ms. Foster's valuation of the businesses could be flawed. Even so, Mr. Foster did not raise this issue in his point relied on, precluding review of it here. Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"). *See also Aurich v. Aurich*, 110 S.W.3d 907, 914 n. 4 (Mo.App. W.D.2003).

For exactly the same reason, we also need not consider Mr. Foster's argument that his inability to present evidence on the value of the property violated his right to due process. Rule 84.04(e). Even if he had preserved this argument for review, however, it would lack merit since his absence at trial resulted solely from his failure to comply with the conditions attached to the continuance. *Cf. Ronollo v. Ronollo*, 643 S.W.2d 646, 648 (Mo.App. E.D. 1982) ("Wife also complains that her absence denied her due process resulting in an unfair award of marital property and inadequate maintenance. Our holding that the continuance was properly denied disposes of the due process argument.").

Accordingly, Mr. Foster's third point is denied.

## IV. Conclusion

The trial court did not abuse its discretion in proceeding with the trial of this case and in the valuation of the marital property. Accordingly, Mr. Foster's first and third points are denied. But the trial court failed to make the necessary child custody findings and further failed to prepare a complete parenting plan consistent with statutory requirements. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for the trial court to make the required child custody findings and to prepare a complete parenting plan. Though not mandatory, the trial court may schedule a hearing on the custody issue.

LISA WHITE HARDWICK, P.J. and ROBERT G. ULRICH, J. concur.