Dwane Allen WILLS, II, Appellant,

v.

Julie Russene Whitlock WILLS, Respondent.

No. WD 65197.

Missouri Court of Appeals, Western District.

June 13, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2006.

James A. Kessinger, Kansas City, MO, for appellant.

Weldon W. Perry, Jr., Lexington, MO, for respondent.

Before: ELLIS, P.J., LOWENSTEIN and SPINDEN, JJ.

HAROLD L. LOWENSTEIN, Judge.

Dwane Wills ("Father") filed a petition to modify child support to be paid by his former wife, Julie Whitlock ("Mother"), for their two children and to restrict her visitation. Father has legal and physical custody. At the heart of this appeal is Father's request to substantially restrict Mother's visitation. Whitlock is presently incarcerated.

The Saline County Circuit Court modified child support to increase Mother's obligation from nothing to $362 per month and modified custody pursuant to Sections 452.370[1] and 452.400, addressing support and visitation respectively. Wills brings four points on appeal and, as stated above, his main point asserts that the judgment of the trial court did not sufficiently restrict Mother's visitation.

## I. FACTUAL & PROCEDURAL HISTORY

The marriage of Mother and Father was dissolved on December 11, 1997. Two children were born of the marriage, a boy born in June 1987 and a girl born in June 1992. There was no order of child support entered by agreement of the parties. Mother was to provide health insurance.

The following background facts are taken from *Wills v. Wills,* 90 S.W.3d 126, 127–28 (Mo.App.2002), where Father disputed the amount of visitation allowed to the maternal grandmother, Doris Whitlock:

> Pursuant to the parties' separation and property settlement agreement, which was approved by the trial court and was fully incorporated into the decree of dissolution on December 11, 1997, Father was granted sole legal custody of the children and was designated as the primary physical custodian. Mother was granted reasonable and specific visitation with certain conditions. Specifically, Mother was not to consume alcohol at any time or prior to or during any period of visitation, she was to submit to random urinalysis for two years after the entry of the decree, and she was to attend 12–step meetings of Alcoholics Anonymous weekly. Any positive urinalysis would result in Mother's visitation being supervised by a responsible adult selected by the Guardian Ad Litem for six months subject to random alcohol

testing. After two years, if Mother had all negative alcohol and drug screens, all visitation conditions would be terminated.

Within one month of the dissolution decree, Mother tested positive for alcohol. By January 1998, she tested positive a second time and her visitation was supervised. Mother's mother, Doris Whitlock (Grandmother), was named as the supervisor.

On May 24, 1999, Mother filed a motion to modify the dissolution judgment as to child custody, visitation, and support or, in the alternative, to remove or rescind all visitation restrictions on her. She requested joint legal custody and primary physical custody of the children. Approximately one year later, on April 20, 2000, Father filed a motion for award of attorneys' fees alleging that Mother failed to offer to enter into non-binding mediation before filing her applications for orders to show cause in April and May 1998, as required by the parties' separation and property settlement agreement incorporated into the dissolution judgment.

Hearings on the merits of Grandmother's and Mother's motions to modify were held in October and December 2000. The trial court entered its judgment on December 29, 2000. It found that a change in circumstances so substantial and continuing had occurred to make a modification of the dissolution judgment necessary to serve the best interests of the children. It awarded Father sole legal and primary physical custody of the children with visitation to Mother to be supervised by Grandmother. The court also placed special conditions on Mother's visitation including that she not consume alcohol or illegal

---

**1.** All statutory references are to RSMo 2000 unless otherwise indicated.

drugs any time including prior to or during any period of visitation, that she submit to random urinalysis tests, and that she attend 12-step meetings of Alcoholics Anonymous weekly. The court further ordered that after six months of negative alcohol and drug screens, all restrictive conditions of visitation, including supervision of visitation, shall be terminated.

Mother did not consistently comply with the order. She failed to make weekly filings of the tests over a six-month period, but on several occasions, Mother filed several weeks' worth of negative tests. Once Mother failed to comply with the testing requirements, Father prevented her from having any visitation with the children. March 2001 was the last time Mother had contact with the children.

Between 2002 and the end of 2004, Mother was incarcerated three times in those three years for alcohol-related offenses. On September 8, 2003, Father filed this action to significantly restrict Mother's visitation and child support modification, in the form of periodic payments.

In his proposed parenting plan, Father requested that he be allowed to listen in on phone conversations between Mother and the children. He wanted Mother prevented from attending the children's school functions without his consent. Mother was not to contact the children at school or daycare without Father's express prior verbal and written permission. He asked that Mother not "impose her presence" within 100 yards of the children without Father's written consent. He requested sole access and control over the children's medical records and decisions. His proposed visitation schedule did not allow Mother any visitation on holidays, school breaks, or summer vacations.

After a hearing, the trial court found that while Mother's chronic alcohol dependence may impair the children's emotional development, the behavior that caused the incarcerations did not involve or endanger the children. The trial court also found that Father was misusing the 2000 custody plan to totally eliminate Mother's contact with the children, and that Father would misuse any impediment placed between Mother and her right to see the children. The trial court noted the public policy of the state to ensure that both parents had meaningful contact with the children under custody arrangements, and the need to protect the children from Mother's destructive behavior.

In its judgment now under review, the trial court allowed Mother, upon her release from prison, to have unsupervised visitation with the children on various holidays, birthdays, and school vacations. Under the new parenting plan, Mother was to pick up and drop off the children at the county Sheriff's department. At the time of exchange, if an officer suspected that Mother was intoxicated, the custody plan required Mother to submit to a breathalyzer or blood test. If she failed the test, she would not be allowed to exercise her visitation rights.

The trial court found that there was a substantial and continuing change of circumstances as to make the terms of child support unreasonable. The trial court found that Father's income had decreased since the time of dissolution and that Mother's had increased. Mother was ordered to pay $362 in monthly child support. Father's first and second points on appeal deal with the visitation. His remaining points relate to the decisions on child support and attorney's fees.

## II. VISITATION

### A. COMPLIANCE WITH 452.400

■ In his first point on appeal, Father argues that the trial court erred in remov-

ing restrictions on Mother's visitation with the children. Father argues that Section 452.400.2 requires a showing of treatment and rehabilitation before previously ordered visitation restrictions can be removed.

■ The standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and this court must uphold the trial court's judgment unless it lacks substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Id.* at 32. "The trial court is in the best position to judge the credibility of the witnesses and may believe all, part, or none of any witness's testimony." *Foster v. Foster*, 149 S.W.3d 575, 579 (Mo.App.2004) (quoting *Gant v. Gant*, 923 S.W.2d 527, 530 (Mo.App.1996)). This court will defer to the decision of the trial court even when the evidence could support a different conclusion. *Id.*

A non-custodial parent is entitled to reasonable visitation rights with her children. § 452.400.1(1). However, the trial court has the power to restrict a parent's visitation rights and to order supervised visitation with the child. *Id.* The trial court may restrict visitation if it finds that visitation would endanger the child's physical health or impair emotional development. *Id.* Visitation rights may also be restricted if there are allegations of abuse or domestic violence. *Id.*

Upon a motion for modification of visitation, the trial court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." § 452.400.2(1). If a parent's visitation was previously restrict-ed, Section 452.400.2(3) limits the ability of a trial court to modify visitation restrictions:

When a court restricts a parent's visitation rights or when a court orders supervised visitation because of allegations of abuse or domestic violence, a showing of proof of treatment and rehabilitation shall be made to the court before unsupervised visitation may be ordered.

Section 452.400.2(3) specifies that treatment and rehabilitation is only a required showing when allegations of abuse or domestic violence gave rise to the order of supervised or restricted visitation under this statute. A non-custodial parent is not required to show treatment and rehabilitation if the supervised visitation was ordered because of endangerment or impairment.

The issue then, is whether the supervised visitation was ordered because of endangerment/impairment, abuse, or domestic violence. In its 2000 judgment, the trial court ordered supervised and restricted visitation for Mother. The trial court did not specifically identify upon which grounds it was restricting visitation. On appeal, this court affirmed the restrictions and held that the trial court imposed them because it found visitation with Mother would be detrimental to the children's physical or emotional wellbeing. *Wills v. Wills*, 90 S.W.3d 126 (Mo.App.W.D.2002).[2] Moreover, if the trial court finds that domestic violence or abuse has occurred, the court must make specific findings of fact to show that the visitation arrangement best protects the child. § 452.375.13. No such findings were made in the 2000 judgment. Therefore, the supervised visitation was

---

**2.** The parties have appeared before this court before, appealing the 2000 visitation and custody judgment. The point on the prior appeal dealing with grandparent visitation was disposed of in a published opinion, *Wills v. Wills*, 90 S.W.3d 126, 127–28 (Mo.App.2002). The other points were disposed of in an unpublished memorandum opinion. It is the unpublished opinion that we reference now.

imposed because the trial court found that Mother's dependence on alcohol would be detrimental to the children's physical or emotional wellbeing. Mother was not required to make a showing under Section 452.400.2(3) of treatment and rehabilitation in order to receive unsupervised visitation with her children. The point is denied.

## B. REMOVAL OF VISITATION RESTRICTIONS

■ Second, Father argues that the trial court erred in removing the restrictions on Mother's visitation that required her to file weekly alcohol tests. Father asserts that removing the restrictions was not in the best interests of the children and the findings made by the trial court were not supported by substantial evidence.

Review of the trial court's judgment on a motion to alter visitation is also governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The trial court found that while Mother's chronic alcohol dependence may impair the children's emotional development, the behavior that caused the incarcerations did not involve or endanger the children. The evidence was that from December of 2000 until the time of trial, August 30, 2004, Mother was incarcerated three times for alcohol-related offenses. In 2002 and 2003, Mother pled guilty to two of the offenses. On each offense, she was sentenced to five-year consecutive sentences. The trial court suspended execution of sentence, Mother served 120–days shock time in the Missouri Department of Corrections for each offense and she was placed on probation. In 2004, Mother violated her probation by drinking. At the time of trial, Mother was serving on the two consecutive five-year sentences. She had been incarcerated for several months and had already been through her first parole hearing, which had been denied. Also,

Mother's driving privileges have been revoked for ten years.

The evidence was that the children were not present at any time during Mother's alcohol-related offenses. There was testimony that Mother was intoxicated on one occasion when she visited her son in 2001. There was also testimony from Father that Mother had not seen the children since March 2001. Son testified that Mother has never driven him anywhere when she was intoxicated. Son also testified that he did not want to have any contact with Mother unless she showed improvement in her addiction.

Father testified that Mother called the children when she was drunk, that she would place boyfriends on the phone to speak to the children, and that she had inappropriate conversations with the children. Mother disputed those allegations.

Father introduced expert testimony from a psychiatrist, Dr. Daniel, as to the impact of Mother's addiction and behavior on the children as well as the impact on the children if she was allowed visitation. Daniel testified that unless Mother undergoes systemic treatment for alcoholism and remains sober, visitation with the children would be detrimental to them. On cross-examination, however, Daniel testified that Mother should not be wholly removed from the children's lives because of her chronic alcoholism. The doctor agreed that portions of Father's proposed visitation plan which involved severe restrictions on Mother's contact with the children would not be in the best interests of the children.

The trial court found that Father was misusing the 2000 custody plan to totally eliminate Mother's contact with the children. The trial court also found that any court-ordered impediment to Mother's visitation would be used by Father to prevent her from seeing her children. In regard

to Father's actions, the evidence was that under the prior custody order entered in December 2000, Mother was to submit alcohol tests to the circuit court every week for six months to have certain restrictions on her visitation lifted. Mother did not consistently comply with the order. When Mother did not comply, Father did not allow any visitation to occur, a consequence not called for in the parenting plan. Even when Mother complied with the order and filed negative tests, Father continued to prevent visitation. Mother testified that she has tried to visit with the children over the past three and a half years, but that Father has not allowed a single visit. He also denied Mother phone communications with the children.

After reviewing the transcript and record on appeal, it appears that the trial court's finding that the behavior that caused Mother's incarceration did not involve or endanger the children was supported by evidence sufficient to affirm the trial court's ruling on appeal. Mother did not drive her children while she was intoxicated. The trial court had sufficient evidence that Mother's driver's license will remain suspended for ten years, and there was evidence that she relied on her mother and friends for transportation.

The trial court, however, did find that Mother's drinking may impair the children's emotional development if Mother is allowed to be around the children while drinking. This finding is also supported by substantial evidence.

Moreover, the finding made by the trial court that Father intended to deny Mother any meaningful contact with the children is supported by substantial evidence. All parties agreed that Mother had not seen her children since March 2001. Father abused the existing restrictions, denied phone contact, did not allow visitation even when Mother had complied with the alcohol testing requirements and requested restrictive visitation.

Given the standard of review and the discretion allowed the trial court in these matters, the decision of the trial court to allow visitation with restrictions dependent upon Mother's sobriety is not against the weight of the evidence. Considering that Mother had not seen her children for over three and a half years, that Father's expert testified Mother should not be wholly removed from the children's lives because of alcoholism, and in light of the finding that the behavior that led to Mother's incarceration did not directly endanger the children, the decision of the trial court to allow Mother visitation with the children after her release from prison is not against the weight of the evidence.

### III. CHILD SUPPORT AWARD

In his third point on appeal, Father argues that the trial court erred when it failed to consider all of Mother's income when setting the amount of support and by failing to make the child support award retroactive.

■ "We will affirm the trial court's judgment on a motion to modify child support absent a manifest abuse of discretion." *McCallum v. McCallum*, 184 S.W.3d 169, 173 (Mo.App.2006). If the award is contrary to applicable law, it is the duty of the appellate court to adjust the award. *Burton v. Donahue*, 69 S.W.3d 76, 79 (Mo.App.2001).

### A. IMPUTED INCOME

■ On the issue of whether the trial court failed to consider all of Mother's income when setting the amount of child support, the trial court calculated Mother's income at $1,918 per month and awarded child support to Father for $362 per month. The trial court found that Mother's actual gross monthly income was

$308.50, which was comprised of $300 per month she received in trust income and the $8.50 she earns in prison. The trial court also found from the evidence that Mother had additional sources of income available to her on a monthly basis. These additional sources consisted of payments made by her mother ("Grandmother") to her, with all sums involved yielding a gross monthly imputed income of $1,610: $300 per month directly to Mother; gift of health insurance of $635 per month; gift for care of horse of $175 per month; and regular credit card payments made on Mother's behalf of $500 per month.

Father argues that the trial court should have imputed more income, specifically, the full amount of income to Mother's lifestyle as provided by Grandmother. Father claims that the evidence at trial showed that Grandmother provided a great deal of money for Mother: in 2001, Mother received more than $5,668 per month from Grandmother; in 2002, Mother received $2,728 per month; and in 2003, Mother received $3,484 per month. Essentially, Father argues that all monies afforded previously by Grandmother to Mother must be imputed to Mother as income because it is likely to continue at such levels upon her release from prison.

■ Under proper circumstances, it is within the trial court's discretion to impute income to an underemployed parent. *Lokeman v. Flattery*, 146 S.W.3d 422, 427 (Mo.App.2004). "What constitutes proper circumstances depends upon the facts and must be determined on a case-by-case basis." *Id.*

■ The trial court was not required to use an average of the funds previously provided to Mother by Grandmother. "[A] trial court, in determining the amount of income to impute to a party in its Form 14 PCSA calculation, is not required in every instance to average the party's prior three years of income. In determining probable earnings, the trial court may rely on any time period as may be appropriate under the circumstances." *State ex rel. Stirnaman v. Calderon*, 67 S.W.3d 637, 640 (Mo. App.2002) (quoting *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 875 (Mo.App.2001)).

When considering the testimony of Grandmother, the trial court did not abuse its discretion by not relying on three years of prior income. Grandmother testified at trial that although she had voluntarily afforded funds for certain things to support Mother in the past, she expected Mother to get a job and otherwise support herself upon release from prison. Therefore, the trial court was correct in imputing the amount that it did, because any further imputation would have been speculative. *See Hern v. Hern*, 173 S.W.3d 653, 655 (Mo.App.2005) ("[A] trial court's assessment of an amount of income to impute to a party must be supported by evidence at trial and not based upon mere speculation").

## B. RETROACTIVE AWARD

■ "The trial court has considerable discretion in making child support awards retroactive." *Bearce v. Lewey*, 182 S.W.3d 737, 746 (Mo.App.2006). "In deciding whether to order a modification retroactive, the fact finder should consider all factors relevant to the issue and balance the equities as called for by the facts and circumstances of the particular case." *Honderick v. Honderick*, 984 S.W.2d 205, 214 (Mo.App.1999). Under the terms of the dissolution and a later modification, the parties agreed that no child support would be paid. Mother was to pay for the children's health insurance costs. If the court were to order retroactive child support, the ruling would be contrary to agreements previously made by the parties. After review of the record on appeal, this court concludes that the trial court did not abuse its discretion in declining to make the award retroactive.

## IV. ATTORNEY'S FEES

Finally, Father argues that the trial court erred in failing to award him attorneys' fees. The trial court may award attorneys' fees under Section 452.355. The decision of a trial court to grant or deny attorneys' fees is reviewed for an abuse of discretion. *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 93 (Mo.App. 2006). The trial court found that Father and Mother had approximately equal financial resources available to them, that the merits of the cases of both were equal, and that there was nothing remarkable about the conduct of either party during the pendency of the suit. These findings were supported by the record. The decision of the trial court to deny the request for attorneys' fees was not an abuse of discretion.

## V. PARENTING PLAN

Finally, we note that the parenting plan is missing several provisions required by statute. Section 452.375.9 states that:

Any judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310. Such plan may be a parenting plan submitted by the parties pursuant to section 452.310 or, in the absence thereof, a plan determined by the court. . . .

Section 452.310.7 requires a specific written schedule detailing, among other things, visitation and residential time, and a specific written plan detailing how decision-making rights and responsibilities are to be shared between the parties. In several respects, the parenting plan adopted by the trial court is deficient. Although this issue is not raised by either party, this court may address the omissions in the parenting plan. *Simon–Har-ris v. Harris*, 138 S.W.3d 170, 181 (Mo. App.2004). If the parenting plan does not include the terms mandated by Section 452.375.9, remand is required "so that the trial court may prepare a complete parenting plan consistent with the statutory requirements." *Foster v. Foster*, 149 S.W.3d 575, 581 (Mo.App.2004).

The trial court failed to detail visitation time for weekday and weekend schedules, summer vacation, and several major holidays, including the Fourth of July. Labor Day was addressed but Memorial Day was not. The trial court allowed for "reasonable access" to the telephone but this is not sufficiently detailed. *Id.* No procedures were identified for notifying the other party when a variation was needed in the visitation schedule. In regard to decision-making, the trial court did not identify child care providers, including how they would be selected, nor did it specify a dispute resolution procedure for matters in which the parties disagree on or in interpreting the parenting plan. Therefore, we remand to the trial court for the purposes of preparing a complete parenting plan that is consistent with the statutory requirements of 452.375.9 and 452.310.7.

## VII. CONCLUSION

This court is mindful of the conflicting and difficult factual scenario that faced the trial judge in this case. It is hoped that Mother and Father can accept and abide by the trial court's judgment on visitation. This case is remanded for the sole purpose of preparing a parenting plan that complies with Sections §§ 452.375.9 and 452.310.7. All other aspects of the judgment are affirmed.

All concur.