Charles C. CAMPBELL and Barbara B. Campbell, Appellants,

v.

Wayne R. SHAW, Kimberly J. Shaw and Shaw Enterprises, Inc., Respondents.

No. WD 53318.

Missouri Court of Appeals,
Western District.

June 24, 1997.

settle their disputes about a tract of real estate. The Campbells contend that the circuit court erred because they disputed genuine issues of material fact concerning payment of the mortgage and the "reasonable commercial" inspection condition. We agree; therefore, we reverse and remand the case to the circuit court for further proceedings.

This is part of the parties' ongoing dispute concerning property which the Shaws sought to buy from the Campbells. Their dispute resulted in three separate lawsuits—two by the Campbells and one by the Shaws. The Shaws obtained judgments against the Campbells in two of the lawsuits, and they received significant monetary awards.

In November 1995, in an effort to settle these disputes and judgments, the Campbells agreed to convey to the Shaws a general warranty deed to the real estate, improvements, and personal property subject to a lien of a deed of trust in favor of Macon Building and Loan Association securing a $130,000 promissory note; a lien of a deed of trust in favor of Penelope Campbell securing a $5684.84 promissory note; two easements; and 1995 real estate taxes. Concerning the deeds of trust, the agreement said:

> [T]he Campbells hereby warrant that the promissory notes secured by said deeds of trust are current, that no default has heretofore occurred with respect to said deeds of trust or underlying promissory notes and that no default presently exists with regard to said deeds of trust or underlying promissory notes.

The Campbells also agreed "to make each monthly payment on the Macon Mortgage and Note for a period of six . . . months from the date of this Agreement." The agreement also provided:

> This Stipulation And Agreement is contingent upon the following (any of which may be waived by the Shaws or extended for up to 30 additional days by the Shaws):
>
> a. Within 7 days of the date of this Stipulation And Agreement, an inspection of the Real Estate by the Shaws or representatives of the Shaws to ascertain that the Real Estate is in a reasonable commercial condition.

Thad Mulholland, Columbia, for Appellants.

Michael Riley, Jefferson City, for Respondents.

SPINDEN, Judge.

Charles and Barbara Campbell appeal the circuit court's summary judgment for Wayne and Kimberly Shaw and Shaw Enterprises, Inc., in regard to an agreement they had to

On November 27, 1995, the Shaws' attorney sent the Campbells a letter which declared the agreement to be "null and void." The letter said:

In accordance with the inspection provisions of the Stipulation and Agreement to Compromise and Settle All Claims, dated November 20, 1995, this letter will serve as notice that the Shaws have ascertained and found that real estate described in the Stipulation is not in a reasonable commercial condition. Therefore, the Stipulation and Agreement to Compromise and Settle All Claims, dated November 20, 1995, is hereby declared null and void.

The Campbells responded by filing a petition for declaratory judgment asking the circuit court to declare the agreement to be valid and binding on the parties and that the judgments against the Campbells were fully and completely satisfied. The Shaws filed a motion for summary judgment.

The Shaws asserted that the agreement was conditioned on their inspection of the property and determination that it was in a reasonable commercial condition. They filed the affidavit of Wayne Shaw which said that he determined that the property was in an "unfit condition." They also argued that the agreement was conditioned on the Campbells' keeping the mortgage current and that they had not done so. The Shaws attached the deposition testimony of Steve Curtis, vice-president of Mid–America Mortgage Services, Inc.,[1] to their summary judgment motion. Curtis testified that the Campbells' mortgage was past due and had not been current since September 1, 1995. Mid–America Mortgage's business records showed that the last payment was posted on November 20, 1995, and was for the payment due on September 1, 1995.

The circuit court granted the Shaws' motion for summary judgment without stating its reasons. If either of the grounds asserted by the Shaws is correct, the circuit court's summary judgment was proper. The Campbells complain that the circuit court's summary judgment was erroneous because genuine issues of material fact were in dispute concerning both grounds.

■ The Campbells first contend that the circuit court could not have based its summary judgment on the Shaws' rejection of the property as unfit because their agreement was not contingent on the property's being in a reasonable commercial condition but only on the Shaws' inspection of the property. They argue that the contingency was satisfied when the Shaws inspected the property. We disagree. The provision clearly states that the agreement is contingent upon an inspection of the property by the Shaws "to ascertain that the Real Estate is in a reasonable commercial condition." If we read the provision as the Campbells would have us read it, the contingency would be satisfied even if the property was not in a reasonable commercial condition.

■ The Campbells next contend that whether or not the property was in a reasonable commercial condition was genuinely disputed; therefore, summary judgment was inappropriate. We agree.

The Shaws claim that because they believed that the property was not in a "reasonable commercial condition" they had the right to void the contract. They argue:

[T]he Agreement was contingent upon the Shaws or their representatives ascertaining the property to be in a reasonable commercial condition. The contingency does not state that the property must be in a reasonable commercial condition, nor does it state that an impartial third party must decide whether the property is in a reasonable commercial condition. It speaks only of the Shaws or their representatives inspecting the property and ascertaining the property to be in a reasonable commercial condition. The most reasonable reading of this language is that the Agreement was contingent upon the Shaws' subjective belief, based upon their inspection, as to the commercial condition of the property.... A reading of the contract based upon the Shaws' subjective belief as to the commercial

---

1. Although Mid–America Mortgage had assigned the loan to Macon Building and Loan Association, Mid–America Mortgage continued to service it.

condition of the property makes it unnecessary to determine whether the property objectively was in a reasonable commercial condition. [The Campbells'] argument that there was a genuine factual dispute as to whether the property was in fact in a reasonable commercial condition therefore becomes irrelevant. The only relevant factual issue was whether the Shaws believed the property to be in a reasonable commercial condition.

We disagree.

■ When a contract is contingent on one of the parties' satisfaction, the party must exercise judgment in good faith and as a reasonable person—not arbitrarily without a *bona fide* reason for his or her dissatisfaction. *Hickham v. Chronister,* 792 S.W.2d 631, 633 (Mo.App.1989). Hence, in determining whether the Shaws properly rejected the property, the circuit court must decide whether their rejection was reasonable and in good faith.

The Shaws submitted the affidavit of Wayne Shaw which said that the property was rejected because of its "unfit condition." The Campbells countered with their own affidavits, saying that the property was in a reasonable commercial condition, and with the affidavit of Larry Atterberry, a real estate auctioneer, which said that he inspected the property 40 days before the Shaws' inspection and found it to be in a reasonable commercial condition. The Campbells' affidavits put in dispute whether a reasonable person would find the property to be in a reasonable commercial condition. Hence, the circuit court should not have entered summary judgment on this ground.

The Campbells also contend that the circuit court could not have granted summary judgment based upon their failure to make mortgage payments. They argue that the mortgage provision is not a condition or contingency of the agreement; therefore, the Shaws were not entitled to rescind the agreement. They argue that the Shaws have a different set of remedies available to them for any alleged breach of warranty to keep the mortgage current.

The Shaws, on the other hand, contend that the Campbells committed a material breach of the agreement by not keeping their mortgage payments current and by not paying their mortgage payments for the six months after making the agreement. They assert that because of this material breach they had the right to rescind the contract.

■ The Campbells' agreement to keep the mortgage current and to pay the mortgage payments for the six months after making the agreement was not an express condition of the contract but was a promise. In cases involving breach of a promise, the proper remedy depends on whether the breach was material. If the breach is material, the Shaws would be free to discharge the contract and to sue for total breach, but if the breach is immaterial, the Shaws cannot discharge the contract but can sue for a partial breach. *See* JOHN D. CALAMARI AND JOSEPH M. PERILLO, LAW OF CONTRACTS § 11–15 (3d ed.1987).

■ The resolution of this dispute, therefore, turns on whether the Campbells' failure to keep their mortgage payments current and to pay the mortgage payments for the six months after making the agreement constituted a material breach. As this court's Eastern District said in *Curt Ogden Equipment Company v. Murphy Leasing Company, Inc.,* 895 S.W.2d 604, 608–09 (Mo. App.1995):

> Where a party fails to perform according to the terms of the contract, it must be determined whether the breach is material. J. Calamari & J. Perillo, The Law of Contracts § 11–22 (2d ed.1977). If the breach is material or if the breaching party's performance is a condition to the aggrieved party's performance, the aggrieved party may cancel the contract. *Id.* If the breach is not material, the aggrieved party may sue for partial breach, but may not cancel. *Id.* In determining whether a breach is material, an important consideration is the degree of hardship on the breaching party and the extent to which the aggrieved party has received the substantial benefit of the promised performance and the adequacy with which he may be compensated for partial breach by damages. *Id.*

Thus, a material breach in a contract may excuse the other parties' performance. *Daugherty v. Bruce Realty and Development, Inc.*, 892 S.W.2d 332, 335 (Mo.App. 1995). If, however, the breach is not material, the other party may not cancel the contract but may seek other remedies.

 Whether a breach is material or immaterial is a question of fact. *Curt Ogden Equipment Company*, 895 S.W.2d at 609. Because a genuine issue exists as to whether the nonpayment of the mortgage constituted a material breach, the circuit court should not have granted summary judgment on this ground.

The circuit court erroneously granted summary judgment in favor of the Shaws. We, therefore, reverse and remand to the circuit court for further proceedings.

BERREY, P.J., and SMART, J., concur.