**GREENTREE PROPERTIES, INC., and H & S Developers, Inc., Plaintiffs–Appellants,**

v.

**Donald KISSEE, Trustee of the Kissee Trust, D & N Investments, L.L.C., and Keith Kissee, Defendants–Respondents.**

No. 24518.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 5, 2002.

Motion for Rehearing and Transfer to Supreme Court Denied Dec. 27, 2002.

Application for Transfer Denied Jan. 28, 2003.

Thomas Y. Auner, Janis L. Prewitt, Springfield, for appellants.

J. Kaye Irwin, Springfield, for respondent, Donald Kissee, trustee of the Kissee Trust.

Daniel R. Wichmer, Kendall R. McPhail, Lathrop & Gage, L.C., Springfield, for respondent, Keith Kissee.

NANCY STEFFEN RAHMEYER, Chief Judge.

Greentree Properties, Inc. (Buyer "Greentree Properties"), and H & S Developers, Inc. (Buyer "H & S Developers") (collectively, "Buyers") brought suit against Donald Kissee as Trustee of the Kissee Trust, D & N Investments, L.L.C. (Seller "D & N Investments"), and Keith Kissee (collectively, "Sellers") to enforce a real estate contract. Specifically, Buyers sought to force Sellers to proceed with the sale of approximately 72 acres of land located in Christian County pursuant to a real estate contract executed on October 19, 1999. Sellers claim to have terminated the real estate contract on May 6, 2000, for Buyers' failure to timely deposit a $10,000 earnest money note and for other contract problems. The Circuit Court of Christian County entered judgment for Sellers, and Buyers appeal. We affirm the judgment.

Greentree Properties, through Charles Heidelberg ("Heidelberg") as President, entered into a contract with Donald Kissee for the purchase of real estate located at 376 Melton Road ("Melton Road property") for $419,000. Carol Jones Realtors ("Realtors") represented both parties with Karen Trimble ("Trimble") representing Sellers and Doug Garges ("Garges") representing Buyers. D & N Investments and Keith Kissee held title to the Melton Road property, with each possessing an undivided one-half interest. Donald Kissee and Nancy Kissee were the managing members of D & N Investments.

Buyers subsequently assigned the contract to H & S Developers, a corporation formed by Heidelberg and Scott Schaeffer ("Schaeffer") for the purpose of developing a residential subdivision on the Melton Road property. H & S Developers began the development process with the assistance of Donald and Nancy Kissee, which included annexation of the property into the City of Ozark, rezoning, obtaining easements for water and sewer, and plat approval. Greentree Properties subsequently entered into another contract with Waterford East, L.L.C. for the sale of the Melton Road property for a purchase price of $660,000. The closing date on this transaction was scheduled for the same date as the closing date of the initial contract between Greentree Properties and Sellers.

Several provisions of the Melton Road property agreement are central to this dispute. The contract required $10,000 in earnest money in the form of an earnest money note to be deposited in the insured trust or escrow account of one of the brokers within ten banking days, or as soon thereafter as practicable. The contract also contained contingencies on financing and approval of the subdivision plat by the City of Ozark. An addendum dated October 22, 1999 directed that a loan approval letter be provided by January 1, 2000, and all inspections were to be done, approved, and copied to Sellers by January 1, 2000. A subsequent addendum dated January 4, 2000 waived the loan approval letter and the inspections requirement.

The parties are in dispute as to whether the earnest money note was paid. Buyers contend that they gave the earnest money note to Garges on the date of the transaction and that Trimble never made a written request for the earnest money note prior to closing. Sellers and Trimble maintain that, in spite of repeated requests and assurances from Heidelberg, no such note was ever forthcoming. Trimble testified that Heidelberg sought to backdate a blank note and represent that the note had been ready all along. Buyers did not obtain a loan commitment for the loan per the financing contingency, but at some point informed Sellers that Buyers would

close with cash.[1] The requisite approvals by the City of Ozark, the easements and surveys were completed prior to the closing date.

On May 6, 2000, two days prior to closing, Sellers terminated the contract in a letter faxed to Carol Jones Realtors, in which they alleged there were problems with the contract and that the earnest money note had not been paid. On the May 8, 2000 closing date, Heidelberg and Schaeffer appeared and were ready to close, but testified that Sellers refused to close unless the purchase price was increased by $80,000. Heidelberg and Schaeffer left the closing when the issue was raised regarding Buyers' failure to supply the earnest note money and located a copy of the earnest money note in Garges' records; however, by the time they returned, Sellers had already left. Buyers contend they were ready, willing and able to close and that Sellers breached the contract which entitled Buyers to damages. The trial court entered Findings of Fact and Conclusions of Law in a court-tried case, ruling against Buyers. Buyers appeal that judgment.

Buyers bring seven points of trial court error on appeal. Point I contends the trial court should not have found the contract unenforceable due to Buyers' failure to satisfy or waive the financing and plat approval contingencies. Point II contends the trial court should not have found that Greentree Properties was not a real party in interest. Point III contends the trial court should have found that H & S Developers was a real party in interest. Point IV contends the trial court should have found that the contract was enforceable against Keith Kissee and D & N Invest-

ments. Point V contends the trial court should not have found that a letter to Greentree Properties terminating the contract was effective. Point VI contends the trial court should not have excluded Buyers from recovering liquidated damages for breach of the contract. Finally, Point VII contends the trial court should not have found that Buyers' claims against Donald Kissee, as Trustee of the Kissee Trust, were unenforceable. While we agree that some of Buyers' contentions have merit, we find the dispositive issue is whether the letter from Greentree Properties terminating the contract was effective. If it was, there is no valid contract to enforce against any party.

In a court-tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Harris v. Desisto*, 932 S.W.2d 435, 443 (Mo.App. W.D.1996). The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe all, part, or none of the testimony of any witness. *Id.* at 443. We accept as true evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Id.*

The court found in its Findings of Fact and Conclusions of Law that the contract was "unenforceable by either Plaintiff for the reason that neither Plaintiff performed the following obligations which were required of them prior to performance by Defendants ... (b) Plaintiff failed to provide and deliver to Defendant Don Kissee an Earnest Money Note in the

---

1. Buyers contend Sellers were informed prior to the receipt of the letter terminating the contract, however Sellers contend they were never notified it was an all cash transaction. Seller's agent, Trimble, was notified it was an all cash transaction prior to the contract's cancellation.

amount of $10,000." We note that the actual language of the contract required Buyers to deposit an earnest money note in the amount of $10,000 in the insured trust or escrow account of one of the brokers within ten banking days of the execution of the contract or as soon thereafter as was practicable. "The appellate court is primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Cabool State Bank v. Radio Shack, Inc.*, 65 S.W.3d 613, 614–15 (Mo. App. S.D.2002) (*quoting Business Men's Assurance Company of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999)). Therefore, the judgment of the trial court "will be affirmed under any tenable theory, no matter if the reasons advanced by the trial court are wrong or insufficient." *Id.* at 615.

Heidelberg testified that he executed an earnest money note for $10,000 on the day the contract was executed and gave the note to Garges, Buyers' broker. Although Garges was not present at the closing on May 8, 2000, Heidelberg testified that he found a copy of that note in Garges' files at Realtors' office. Garges did not testify at trial and, from what we can glean from the record, Garges was no longer affiliated with Realtors at the time the contract was executed.

Conversely, Sellers' broker Trimble testified that she did not see an earnest money note when the contract was executed or on any subsequent date. Trimble also indicated that no such note was ever placed in the file at Realtors' office. Trimble maintained that she made numerous requests of Heidelberg for production of the earnest money note until just prior to the scheduled closing on May 8, 2000, but was always told that "[Heidelberg] would be getting it to us." Finally, Trimble also testified that at the time of closing Heidelberg sought to sign a blank copy of an earnest money note, backdate it, and have Trimble inform Seller that the note was in the file all along.[2]

After hearing the testimony of both sides, the trial court determined that Heidelberg failed to deliver the $10,000 earnest money note within the prescribed time period of ten banking days or as soon thereafter as was practical. We must defer to the trial court's decision on this issue, for the trial judge is in a better position to determine the credibility of the parties, their sincerity, character and other trial intangibles not apparent in the record. *In re Marriage of Gardner*, 890 S.W.2d 303, 304–05 (Mo.App. S.D.1994). Substantial evidence supports the court's determination.

■■■ Here, the parties contracted for the sale of the Melton Road property, in which Sellers agreed to take the property off the market in return for an earnest money deposit from Buyers as security to assure performance. The trial court found Buyers failed to provide that security in spite of repeated requests from Sellers to do so. "When performance of a duty under a contract is due any non-performance is a breach." *Harris*, 932 S.W.2d at 444 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1979)). The failure to pay the earnest money note con-

---

**2.** Other facts also support the determination that Heidelberg failed to deliver the required earnest money note. Heidelberg testified that he had no idea what happened to the original note after he gave it to Garges, but he was able to find it in Garges' files on the closing date. Heidelberg also admitted that he did not provide Trimble with a copy of the note prior to May 8, 2000, and that Buyers never signed the portion of the note signifying receipt of the earnest money note.

stitutes a breach of the agreement.[3]

Next, we must determine if this breach of the contract terms is a material breach. To justify a rescission, the breach must relate to a vital provision going to the very substance or root of the agreement; the breach cannot relate simply to a subordinate or incidental matter. *Harris*, 932 S.W.2d at 444. Accordingly, a breach must be material before a court will allow a party to rescind a contract. *Campbell v. Shaw*, 947 S.W.2d 128, 131 (Mo.App. W.D. 1997). "[A] material breach in a contract may excuse the other parties' performance. If, however, the breach is not material, the other party may not cancel the contract but may seek other remedies." *Id.* at 132 (citations omitted). It is a question of fact whether a breach is material or immaterial. *Id.* Furthermore, an unreasonable delay in performance may be sufficient grounds for rescission of a contract. *Ballenger v. Castle Rock Building Corp.*, 904 S.W.2d 62, 65 (Mo.App. W.D.1995).

Heidelberg claims the earnest money obligation was irrelevant since Buyers intended for an all cash transaction. While the exact date is disputed, Heidelberg notified Trimble no later than a week prior to the May 8, 2000 closing that he would pay in cash at the closing. Since it was an all cash transaction, Heidelberg argues that Seller was not harmed by the breach. We must disagree.

While no Missouri court has specifically ruled that the failure to deliver an earnest money note constitutes a material breach of the contract, we find authority from other states supporting the finding that a failure to timely pay an earnest money deposit is a material breach of a contract and grounds for rescission. In *Vacova Company v. Farrell*, 62 Wash.App. 386, 814 P.2d 255 (1991), the parties contracted for the sale of real estate. The buyer agreed to pay $60,000 as earnest money in three installments, the first of which was due within three days of the execution of the contract. *Id.* at 261. The buyer failed to timely pay the first installment, and the seller rescinded the contract. *Id.* The court ruled that even though the seller was not prejudiced by the late payment of the earnest money, "the failure to timely pay the 3–day note was a *material* breach of the purchase and sale agreement" and therefore the seller's rescission of contract was proper. *Id.* at 266.

A similar situation occurred in *Green River Valley Foundation, Inc. v. Foster*, 78 Wash.2d 245, 473 P.2d 844 (banc 1970), in which the parties entered into a real estate contract requiring a $5000 earnest money note to be paid within 60 days. The buyer failed to timely pay the cash on the note, however, and after several requests for payment, the seller rescinded the contract. *Id.* at 845–46. The buyer then sued for specific performance on the contract. The court ruled that even though the buyer presented the money toward the note with interest six days later[4], the failure to timely pay $5,000 on the note justified rescission of the contract. *Id.* at 847–48.

In this case, Buyers failed to even deliver the note. We see no difference

---

3. "To make a submissible case for a breach of contract claim, a party must allege and prove: (1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of the contract." *Abbott v. Haga*, 77 S.W.3d 728, 733 n. 4 (Mo.App. S.D.2002).

4. Payment was 37 days late.

between payment on a note that had been delivered and the delivery of the note to Sellers. Sellers removed the property from the market for six months and the trial court found Sellers received no security for assurance of performance by Buyer. The trial court had evidence before it to support a finding that Sellers repeatedly attempted to obtain that security from January until May; the court was free to believe the earnest money was material to the sale of the land. We find that Buyers' failure to deliver the earnest money note within the prescribed time period was sufficient grounds for Seller to rescind the contract. Although we may question Sellers' motives in revoking the contract on this basis only two days prior to the scheduled closing, we must concede that such motives are immaterial.[5]

Therefore, we find that Buyers' failure to provide earnest money was sufficient evidence upon which the trial court could base a finding that the contract was validly terminated prior to the closing. The judgment is affirmed.

PARRISH, J., and ANDERSON, Sr. J., concur.

**5.** Although it appears that Missouri cases address only the motive of the purchaser, the substantive principle is the same. In other words, if there has been a material breach of the contract which entitles the party to rescind the contract, then the motive of the party is immaterial. *See Schaefer v. Rivers,* 965 S.W.2d 954, 958 (Mo.App. S.D.1998).